OPINION OF THE COURT
Fuchsberg, J.
Once again we face sensitive questions associated with an indigent defendant’s pro se representation in a criminal case.
After trial by jury, defendant, Robert Earl Sawyer, was convicted, and thereafter sentenced to an indeterminate term of 25 years to life imprisonment on two counts of murder arising out of the fatal shooting of a grocery clerk in Stow, Chautauqua County. Upon arraignment, the County Court, on March 2,1978, advised him of his right to counsel and gave him a week in which to secure one.
On the adjourned date, March 9, Charles Fagan, Esq., who until shortly prior thereto had occupied the post of Public Defender, in which he apparently had developed some familiarity with the charges against the defendant, *15 appeared with him, but only at the instance of the defendant’s family and solely, as he explained to the County Judge, for the purpose of pursuing the representation matter. In particular, anticipating that defendant’s indigency would require the County Judge to assign counsel, he advanced the argument that a conflict of interest might render the Public Defender’s office ineligible for such an assignment. This he premised on the fact that Fagan’s successor as Public Defender, Richard V. Slater, Esq., had come to his new office from service as Chief Assistant District Attorney, thus, in turn, creating a vacancy which was filled when an Assistant Public Defender, Ronald J. Gibb, Esq., shifted his employment to the District Attorney’s office. The Trial Judge, who, in his position, of course, had to have been aware of these personnel changeovers in the relatively well-knit legal community of nonmetropolitan Chautauqua County, rejected Fagan’s contention with the observation that the court earlier made a disassociation order which separated Slater from the case. Without further exploration of the subject, the court then adjourned the case to March 16, so that defendant could determine whether Fagan was to be his lawyer.
When, on this date, Fagan again appeared but only to give the court formal notification that the defendant lacked sufficient funds to retain private counsel, the court announced the appointment of Bruce K. Carpenter, Esq., in his official capacity as Assistant Public Defendant under Slater, to represent him. The defendant promptly protested, “I don’t want the Public Defender, Your Honor.” Four days later, the court notified the defendant that, after further consideration, it had decided that he was not entitled to counsel of his choice, and therefore would either have to stay with Carpenter or proceed pro se. Defendant responded that he was not capable of defending himself, but still refused to be represented by the Public Defender. In the course of the colloquy, Carpenter informed the court that he had been unable to receive any co-operation from the defendant and suggested the appointment of alternate counsel to follow the case and be present at all proceedings. The court refused to do so or to appoint Fagan in place of Carpenter.
*16 This as prelude, we move to March 22, when the case again appeared on the calendar, this time for pleading. There ensued the following:
“the court: And do you want a lawyer?
“defendant: Yes, Your Honor.
“the court: Then, you have the Public Defender, and I am asking you how you plead to this charge?
“defendant: I cannot plead now, Your Honor, because I cannot accept the Public Defender’s office as counsel.
“the court: I hold him in contempt of Court. The Public Defender — either you are your own lawyer, or the Public Defender is your lawyer. Now, which? Which?
“defendant: I don’t want the Public Defender, Your Honor.
“the court: Then, you are your own lawyer. I enter a plea of not guilty, on your behalf, and I give you 30 days in which to make motions on your behalf.
“mr. carpenter: [Public Defender] I take it, an order is entered relieving the Public Defender of representing Mr. Sawyer at this time? Thank you, Your Honor.
* * *
“the court: * * * I don’t know how you are going to make your own motions. It’s up to you. You have chosen to be your own lawyer, since you will not accept the lawyer I have assigned —
“defendant: I have not chosen —
“the court: You have chosen. I am giving you another chance. You may make your choice. One, represent yourself. Two be represented by the Public Defender. You have no other choice. You are facing a very serious charge. If guilty and convicted, a mandatory sentence is life imprisonment. I strongly suggest you stop playing games with this Court and look out for your own best interests. Your own best interests are probably served by having a lawyer represent you. You will not have me assign anybody, or accept the Public Defender. Now, I know you’ve been talking with another lawyer. I do not know whether or not he has given you any advice, but if he has given you any *17 advice that is contrary to what the Courts of this State say, obviously it isn’t good advice. Now, if you want the Public Defender, I will re-appoint him; otherwise, you have no lawyer.
“defendant: I want to put on the record, I am not competent to defend myself, Your Honor.
“the court: In that case, I assign the Public Defender again to represent you, and I will not hear you say anything one way or the other. You have a lawyer, or you don’t have.”
On March 27, defendant was denied bail. At that time, he again refused the services of the Public Defender, who thereupon was formally relieved of further responsibility to the defendant in this exchange:
“the court: * * * At this time, the Public Defender has pointed out to me that I have not issued a formal order relieving him from the assignment which I made. Is it your desire that you now do so?
“defendant: Your Honor, it is completely up to you.
“the court: No, I am asking you. Would you please answer me yes, or no.
“defendant: We have already discussed this at the last hearing.
“the court: Do you want me to relieve the Public Defender?
“defendant: I do not consent' to have him assigned as my counsel.
“the court: And by not consenting, you say as such you would not accept him as your counsel?
“defendant: That’s correct.
“the court: And would not cooperate with him; would not talk to him and accept the services of his department, is that correct?
“(Whereupon there was no response from the Defendant.)
“the court: Is that correct?
“(Whereupon there was no response from the Defendant.)
“the court: You just don’t accept him, period?
*18 “defendant: I do not consent to have him as assigned counsel, Your Honor.
“the court: Well, I relieve the Public Defender of the assignment which I have made. Please note for the record that Mr. Sawyer is his own counsel as such.”
On at least three subsequent occasions before the trial proper eventually got under way, the court offered to make the Public Defender’s office available, but the defendant was unswerving in his insistence that, while he desired counsel, he would not accept one from the Public Defender’s office.[1] When his counsel-less defense did take place, the defendant proved the truth of his protestation that he was not competent to represent himself; neither disrespectful nor disorderly, he simply showed no comprehension of the applicable evidentiary or substantive law. In effect, the trial was an inquest.
It was essentially on this record that a sharply divided Appellate Division reversed and granted a new trial. In a writing by Justice Schnepp, the majority reasoned that, granted that an indigent did not have the right to select his assigned counsel, the Trial Judge had properly denied defendant’s request, but that, when he relieved Carpenter from further responsibility, the Trial Judge improperly deprived the defendant of a continuing choice of either relying on counsel or proceeding on his own. In contrast, the two dissenting Justices opined that the defendant effectively waived the right to counsel (83 AD2d 205). Though on a somewhat different rationale than the one it adopted, we believe the result the majority reached is the one that should be upheld.
Our analysis begins with the observation that it was incumbent upon the defendant to show “good cause” for the desired substitution. For, while it is true that an indigent defendant is guaranteed the right to assistance of counsel by both our Federal and State Constitutions,[2] this is not to *19 be equated with a right to choice of assigned counsel. Thus, while Trial Judges have a duty to carefully evaluate complaints concerning court-appointed counsel and, when appropriate, effect a change of counsel, “this is far from suggesting that an indigent’s request that a court assign new counsel is to be granted casually” (People v Medina, 44 NY2d 199, 207; see People v Brabson, 9 NY2d 173, 180-181).
Therefore, though a defendant’s confidence in appointed counsel is most desirable, as it is in any client-attorney relationship, a bald profession that it is lacking is not controlling. Good cause for such an opinion must be demonstrated before a substitution need follow. It goes without saying, for instance, that most compelling would be a showing that counsel is unable to provide the defendant effective assistance, as, for example, by reason of professional incompetence or the existence of a personal impediment which handicaps his or her professional performance. Surely, a genuine conflict of interest would entitle a defendant to relief.
In the base before us now the only objection raised was the one broadly uttered under the conflict of interest rubric but at no time was there anything to even slightly suggest that any of the former members of either the District Attorney’s staff or that of the Public Defender who recently had shifted their employments from one of these agencies to the other would not zealously honor the confidences and loyalties assumed in their original positions. Rather, as indicated earlier the County Judge made it known to the defendant that he had been circumspect enough to issue a disasspciation order which presumably was tailored to minimize the risk, if not entirely avoid the occasion, for any occurrence of conflict in fact. And, we note that the Appellate Division, alert to our admonitions in People v Shinkle (51 NY2d 417), thought the Trial Judge could draw a distinction between the circumstances created in Shinkle, where a defense counsel had joined the prosecutor’s office, and the converse here, where one formerly allied with the prosecutor had taken over direction of the Public Defender’s domain. Finally, absent any oral or *20 written definition of the specifics of the disassociation order or any information on Carpenter’s prior vocational history, with neither of which the record here favors us, it can be argued that the details of the order in fact may have mandated a foolproof disassociation procedure and that Carpenter’s background and intended modus operandi would have reinforced it.
But then, of course, less summary treatment of the matter than the record revealed also might have disclosed a less ideal drawing of disassociation lines or, for instance, allowed for exploration of the relationship, if at all, of Gibbs’ successive employments to the handling of defendant’s case. Beyond all this, however, “even if the actuality * * * of prejudice were absent, what of the appearance of things (see Code of Professional Responsibility, Canon 9)?” (People v Zimmer, 51 NY2d 390, 395.) Or, as Shinkle, in its more analogous context, explains, “We recognize that the rule applied in this case may impede the transfer of attorneys between offices of Legal Aid or Public Defender and of District Attorney. This circumstance, however, affords no basis to deny defendants the right to both the fact and appearance of unswerving and exclusive loyalty on the part of attorneys who represent them” (emphasis added) (People v Shinkle, supra, p 421).
Obviously then, to say the least, a fine line here had to be tread. But we need not decide whether it was. This is because a new trial is necessary in any event, since, as we read the record, the trial court did not ascertain that the defendant appreciated the risks of self-representation.
For, even if we assume the defendant’s request for other counsel was properly denied, in the posture of the two options to which he was confined, his unwillingness to accept Carpenter as counsel left the defendant no way to proceed but pro se. This then called upon the court to give the defendant appropriate warnings. Clearly, this requirement was not diminished because the defendant chose to become a pro se litigant because of the strictures of the options open to him rather than in the absence of such restraint. Whatever his displeasure at having to make such a choice, when it ultimately was made it was unequivocal. Indeed, it can be said that his decision was no *21 less, but perhaps more, definite because it was evidenced by conduct rather than the mouthing of a verbal formula.
At the root of the rule calling for special inquiry before a defendant may proceed pro se is recognition that implicit in a defendant’s exercise of the right to do so is a concomitant right to forego the advantages of counsel (Faretta v California, 422 US 806, 835). To make sure this is well understood, more is required than that the right be “unequivocally and timely asserted”. Substantively, it must be “knowing and intelligent” as well. (People v McIntyre, 36 NY2d 10, 17). To ascertain that it is, the court should undertake a sufficiently “searching inquiry” of the defendant to be reasonably certain that the “dangers and disadvantages” of giving up the fundamental right to counsel have been impressed on the defendant (see Faretta v California, 422 US 806, 835, supra; People v White, 56 NY2d 110, 117). Appropriate “colloquy on the record between the judge and defendant” will not only test the defendant’s understanding, but provide an objective basis for review (United States v Bailey, 675 F2d 1292; see United States v Dujanovic, 486 F2d 182; United States v Plattner, 330 F2d 271).
So measured, the precautionary inquiry in this case was woefully inadequate. In the main, the dialogue consisted of repeated judicial importunities that the defendant accept the services of the Public Defender and their repeated rejection by the defendant. The court’s declarations that defendant was “facing a very serious charge” and that “your own best interests are probably served by having a lawyer represent you” simply did not satisfy the duty to make a “searching inquiry”.
Interestingly, the only accounting of dangers of pro se representation that found its way into the record was that contained in an excerpt the defendant read from Gideon v Wainwright (372 US 335) months after Carpenter had been relieved.[3] Though on its face this language could be deemed most informative, there is no way of telling *22 whether and to what extent the defendant appreciated its significance, or whether he was doing no more than reading uncomprehended language supplied to him by another. Unexplored by a cross current of colloquy, we are left in the dark.
Finally, since there is to be a new trial, for the guidance of the trial court should the situation arise again, we now comment on the matter of “standby counsel”. It will be remembered that the trial court rejected Assistant Public Defender Carpenter’s suggestion, made after reporting on defendant’s mistrust, that alternate counsel be appointed to follow the case and be present at all proceedings. On this point, we agree, particularly in a case as serious as the one here, that, where a defendant decides on self-representation, a Judge “may — even over objection by the accused — appoint a ‘standby counsel’ to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant’s self-representation is necessary” (Faretta v California, supra, p 835, n 46). It may be advisable to do so to protect the defendant and to facilitate the trial, not only in serious cases, but “in cases expected to be long or complicated or in which there are multiple defendants” (ABA Standards for Criminal Justice [2d ed], Special Functions of the Trial Judge, standard 6-3.7).
Accordingly, the order of the Appellate Division should be affirmed.

. The defendant even went so far as to bring an article 78 proceeding against the Trial Judge to seek assignment of counsel not associated with the Public Defender. The Fourth Department denied the application (app dsmd 45 NY2d 835).

. (NY Const, art I, § 6; People v Koch, 299 NY 378, 381; US Const, 6th, 14th Arndts; Argersinger v Hamlin, 407 US 25; Gideon v Wainwright, 372 US 335.)

. The defendant made the following statement during discovery proceedings held on July 19, 1978: “I’m not familiar with the proceedings going on here, and I have tried, to the best of my ability, to understand what’s happening, and something I have read, a *22 Supreme Court Decision, Gideon vs. Wainwright: ‘The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel, he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.’ ” (See Gideon v Wainwright, 372 US 335, 344-345.)