THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIE WHITTED, Appellant.

Second Department, December 30, 1985

APPEARANCES OF COUNSEL

*John F. Clennan* for appellant.

*Joseph P. Brown, District Attorney (Barbara J. Strauss* of counsel), for respondent.

## OPINION OF THE COURT

THOMPSON, J. P.

Defendant was convicted of the December 9, 1977 gunpoint robbery of a grocery store. Pursuant to his constitutional right to represent himself (NY Const, art I, § 6; *Faretta v California,* 422 US 806; *People v McIntyre,* 36 NY2d 10), defendant acted as his own attorney at trial. Defendant argues on appeal that the record fails to establish that the trial court undertook the requisite searching inquiry necessary to support a determination that his decision to proceed *pro se* was a competent, intelligent and voluntary relinquishment of his right to be represented by counsel at the trial *(see, People v Sawyer,* 57 NY2d 12, *cert denied* 459 US 1178; *People v Allen,* 39 NY2d 916). A careful and realistic reading of the record, however, leads to the inexorable conclusion that defendant's choice to proceed *pro se* was clearly a competent, intelligent, and voluntary decision. Accordingly, and because defendant's contention that his guilt was not established beyond a reasonable doubt is without merit, the judgment of conviction should be affirmed.

A defendant's prior exposure to legal procedures and his educational history are directly relevant to resolving the question of whether his decision to proceed *pro se* was a voluntary and intelligent choice *(People v McIntyre,* 36 NY2d 10, *supra).* Defendant, prior to the instant prosecution, had a history of at least seven arrests for crimes ranging from murder and assault with a weapon to burglary and possession of stolen property. He had two prior felony convictions, and had served four separate periods of incarceration. Defendant completed tenth grade before leaving school, and records indicate that he was a student of average ability.

Prior to the trial, defendant initiated *pro se* motions for a reduction of bail, to dismiss the indictment on speedy trial grounds, for discovery, and for a new attorney. At a *Wade* hearing conducted before the trial commenced, defendant was represented by Mr. Patsalos, a court-appointed attorney. The *Wade* hearing resulted in a determination that one of the two witnesses testifying at the hearing was unable to identify

defendant, and thus would not be permitted to identify him as the perpetrator of the crime.

As the trial was about to begin Mr. Patsalos, defendant's attorney, indicated that defendant was upset because he wanted an appellate review of the denial of his speedy trial motion before he was subjected to a trial. When the court explained that there was no stay in effect and the trial would begin, defendant indicated he wanted a new attorney. The court informed defendant that Mr. Patsalos was a very competent attorney who had served as an Assistant District Attorney for many years and who had tried many criminal cases. The court's own observation of Mr. Patsalos on other occasions and its knowledge of his reputation warranted an assurance to defendant of Patsalos' ability. The charges against defendant were serious, it was explained, and that is why Mr. Patsalos was appointed. Defendant insisted he would represent himself, reasoning "If I can't get one adjournment until I get my decision from the Appellate Division I would rather not be represented by a lawyer". The court informed defendant he would be bound by the same rules a lawyer would be bound by, including the same rules of evidence. Defendant remained adamant about proceeding *pro se.* The court directed Mr. Patsalos to remain in the courtroom and available to defendant throughout the trial. Patsalos was informed in defendant's presence that "if at any point during this trial he decides he wants counsel to represent him, then I will ask him [Patsalos] to step into the case".

Before jury selection commenced, defendant, in response to the court's inquiry, reiterated that he did not want Mr. Patsalos to represent him during the jury selection. The jury was instructed that defendant had a constitutional right to represent himself, and no inference could be drawn against him by the method in which he questioned witnesses and conducted the trial. Defendant, following jury selection, once again repeated "I would like to say I would like the record to show at this particular time I have waived all counsel which is my constitutional right".

The court recessed the trial until the next day. Following the departure of the jury, the court continued to emphasize to defendant the significance of his decision, stating that before the trial begins defendant should reflect upon his decision because self-representation is "a difficult task at best".

The trial began the next day. Various objections raised by

defendant during the prosecutor's opening, on grounds of hearsay, prejudice, and inaccuracy, were all overruled. Before any witnesses testified, defendant sought to introduce into evidence five separate exhibits pertaining to his pretrial *pro se* motions. The court, in explaining the need to mark each offer of evidence as an exhibit so that a proper record could be made for an appellate court, advised defendant, "I'm sure your attorney would have no problem in doing it. That's one of the dangers that you encounter when you represent yourself because * * * you're going to be bound by the rules of trial procedure, the rules of evidence."

When the taking of trial testimony commenced, two prosecution witnesses testified. Hector Alvarez, the key witness, testified that defendant, whom Alvarez knew for several months prior to the date of the crime, committed the robbery. Lorraine Veve, the other witness, was unable to identify defendant. Defendant impeached Alvarez with regard to his prior record, and emphasized that Veve, who was in the same vicinity as Alvarez during the crime, could not identify him.

When defendant expressed his desire to recall Alvarez and Veve as his own witnesses, and to subpoena other witnesses, the court stated:

"I would suggest again that you might consult with Mr. Patsalos and I know you said you wanted to represent yourself and you are representing yourself, but I have left him here. I don't know what these witnesses can or can't testify to. I don't know whether it will be helpful or not; that's not for me to say. That's something you will have to decide, but perhaps it might be better if you discussed it with Mr.—with an attorney as to whether or not you should call these people. Maybe they might be helpful and they may not, I don't know. I'm not asking you to disclose anything. I'm instructing you that you probably would be better off not to disclose anything because your opponent is here in the Courtroom and it might not be helpful; but if you feel it's necessary I have directed Mr. Patsalos to remain in the Courtroom to advise you.

"Do you wish his assistance? Fine. No one is going to make you accept his assistance. You are representing yourself. I think from what I have seen, observed in this Courtroom since the commencement of this trial and during the trial that there was a knowing, voluntary and intelligent waiver on your part. You knew what you were doing. Whether you were well advised or ill advised to do it, that is something else.

Whether you would have been better off or not this is something only you can determine, but I feel that you fully understood that you were entitled to the assistance of a lawyer and that you consciously, knowingly chose to represent yourself and I can't compel you to seek assistance of counsel, nor can I force you to, nor do I intend to, but as a matter of suggestion I would suggest to you that if you are going to call any witnesses, perhaps you should discuss it with an attorney what you feel the thinking of the attorney will be as to what the witnesses will testify to and whether or not—and in the context of the case it would be helpful to your case. That's all I can tell you."

Later in the trial, when defendant insisted on examining Alvarez and Veve regarding their prior photographic identifications of him, the court, meticulous in protecting defendant from himself and in protecting his rights throughout the trial, specifically warned defendant of the dangers in eliciting such testimony.

Although not directly relevant to the narrow waiver issue presented on appeal, it is nevertheless interesting to note that in a case in which, on the cold record as it appears in this appellate court, the proof of guilt was very strong, the jury verdict was not rendered until two *Allen* charges were given and certain testimony and legal definitions were reread to the jury.

Although the searching inquiry required to establish a knowing and voluntary decision to proceed *pro se* can best be established by an appropriate colloquy on the record prior to the waiver *(People v Sawyer,* 57 NY2d 12, *cert denied* 459 US 1178, *supra),* there is no authority for the proposition that such colloquy is the exclusive method that may be used to establish the effectiveness of the waiver. In this case the court's initial colloquy with defendant was concededly somewhat sparse. Despite this, there is no difficulty in concluding that defendant's decision to proceed *pro se* was made at a time when he was aware of the value of counsel and the risks inherent in representing himself *(see, People v Kaltenbach,* 60 NY2d 797). Defendant had an extensive prior exposure to the criminal justice system. He was sufficiently comfortable with acting as his own attorney to initiate numerous *pro se* motions prior to trial. At the *Wade* hearing he was able to observe the quality of the representation provided by Patsalos. He was informed of Patsalos' ability and prior history, his own need to comply with the rules of evidence, and the seriousness of the

charges against him. The court reiterated on a number of occasions that defendant should reconsider his decision. Patsalos remained available to defendant throughout the trial. Before any testimony was ever taken, defendant, based upon objections he raised during the prosecutor's opening and in his seeking to introduce material into evidence, saw concrete examples of the difficulties he would encounter. Patsalos' advice was again offered to defendant when defendant indicated his desire to pursue his own dubious tactical decisions. In short, it would require an unrealistic and unwarranted reading of the record to conclude that defendant did not knowingly and voluntarily waive his right to counsel.

Our conclusion at bar is squarely within the recent holding of the Court of Appeals in *People v Vivenzio* (62 NY2d 775). Upon similar facts, the court in that case ruled that the defendant therein had made a knowing and voluntary decision to proceed *pro se.* Its decision was premised upon defendant's criminal history, his effective representation by counsel who advised against *pro se* representation, and the trial court's warning to him regarding the dangers of self-representation.

The line of cases relied upon by defendant does not adequately support his position. In *Faretta v California* (422 US 806, *supra)* a knowing waiver was found where the record indicated defendant was literate, was warned he was making a mistake, and was informed that he would have to follow the governing ground rules of trial procedure. *People v Harris* (85 AD2d 742, *affd* 58 NY2d 704 on memorandum opn at App Div), where there was no adequate waiver, was a case in which there was almost no colloquy and there was self-destructive *pro se* representation. In *People v Kaltenbach* (60 NY2d 797, *supra),* the bare warning to defendant that he was facing serious charges and was entitled to an attorney was found to be inadequate to support a knowing waiver. In *People v Sawyer* (57 NY2d 12, *cert denied* 459 US 1178, *supra),* the defendant continually insisted he was incapable of representing himself. In *People v White* (56 NY2d 110), there was a failure to explain the professionalism and objectivity an attorney could provide. These cases are simply not analogous to our fact situation.

In *People v Harris* (61 NY2d 9), within the context of determining whether a guilty plea was knowingly and voluntarily entered, the Court of Appeals concluded that no mandatory catechism was required. The court, in stressing the importance of examining all potential relevant circumstances,

stated that a proper inquiry should focus on reality, not ritual. In light of the knowing and voluntary waiver in this case, the judgment of conviction should be affirmed.

BRACKEN, WEINSTEIN and NIEHOFF, JJ., concur.

Judgment of the County Court, Orange County, rendered February 21, 1979, affirmed.