■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIE J. LONDON, Appellant.—Mahoney, P. J.

On March 8, 1983, Peter Ferraro, with his girlfriend, Abby Citron, and another friend, Denise Ruzzo, went to a restaurant in the City of Kingston, Ulster County, for dinner. At approximately 10:00 P.M., a black male wearing a three-quarter length tan coat entered the restaurant, approached Ferraro's table, took a sawed-off shotgun from under his coat and shot Ferraro in the chest. The assailant left the restaurant. Ferraro was dead.

The following day, Citron picked out a picture of defendant from a photo array at the Kingston Police Department and identified him as Ferraro's assailant. On the same day, defendant's girlfriend, Tina Liebel, went to the District Attorney's office where she stated that she knew who shot Ferraro and that she had the weapon. She then took detectives to the apartment she shared with defendant and gave the officers oral permission to search the premises. The detectives found a sawed-off shotgun with two slugs in it, a rope that Liebel said defendant used as a sling to carry the gun and a three-quarter length tan coat. Defendant was arrested and charged with criminal possession of a firearm.

On March 9, 1983, at a lineup at the Ulster County Police Department, Citron positively identified defendant as Ferraro's assailant. Ruzzo also viewed the lineup but she did not identify defendant as the assailant. At a later Grand Jury hearing, Ruzzo identified defendant and stated that she did not earlier identify him because she did not want to get involved and feared for the safety of her young daughter.

Thereafter, defendant was indicted and charged with murder in the second degree. Defendant chose to proceed *pro se.* After a suppression hearing, County Court refused to suppress the identification testimony of Citron and Ruzzo and, further, found that Liebel had authority to consent to the search of the apartment she shared with defendant and did, in fact, freely and intelligently give her consent to the search. Accordingly,

County Court refused to suppress the physical evidence the police seized at the apartment.

At trial, the People introduced the testimony of Citron and Ruzzo establishing that defendant entered the restaurant on March 8, 1983 and shot Ferraro in the chest with a sawed-off shotgun and then exited the restaurant. The People also introduced the sawed-off shotgun, rope sling and a three-quarter length tan coat found in the apartment defendant shared with his girlfriend. Additionally, the People proved that the slug removed from Ferraro's body was fired from the shotgun found at defendant's apartment. The jury found defendant guilty of murder in the second degree and defendant was sentenced to an indeterminate term of imprisonment of 25 years to life. This appeal ensued.

Defendant's contention that the physical evidence seized from his apartment should have been suppressed is without merit. Where the People rely on consent to justify an otherwise unlawful police intrusion, they bear the "heavy burden" of establishing that such consent was freely and voluntarily given *(People v Zimmerman,* 101 AD2d 294, 295; *see, People v Gonzalez,* 39 NY2d 122, 128). That was not a difficult burden for the People to sustain in this case. The issue of whether consent to search was voluntary is a question of fact to be determined from the totality of the circumstances *(see, People v Boylan,* 111 AD2d 928). Here, defendant's live-in girlfriend was not under arrest or in custody. She was fully cooperative and, in fact, called the police, stated she knew who shot Ferraro and that she had the gun. She accompanied the police to the apartment and, not only freely, but almost enthusiastically, gave her consent to search. Finally on this point, while it is true that there is no evidence that Liebel was ever advised that she could refuse to consent to the search, such advice is not mandatory *(see, Schneckloth v Bustamonte,* 412 US 218, 248-249; *People v Kuhn,* 33 NY2d 203, 209).

Defendant's next contention is that it was error for the police to have used in the photo array a mugshot of him taken as a result of an arrest in 1982 for burglary, a crime for which he was acquitted. We disagree. Even assuming that the police illegally retained defendant's photograph in violation of CPL 160.50, a subsequent identification of defendant in a later offense would not be suppressed simply because the illegally retained photograph was used. CPL 160.50 was not designed to immunize a defendant from the operations of a law enforcement official's investigatory display of a photograph.

Next, defendant challenges the in-court identification of him

on the ground that the pretrial lineup was improper because there was no indictment or information pending against him (see, CPL 240.40 [2]). We disagree. While at the time defendant was ordered to be present for a lineup he was not the subject of an indictment or information charging him with murder, it is well settled that nontestimonial evidence may be obtained from a criminal suspect who has not been charged with a crime provided the People establish probable cause that the suspect has committed the crime, that there is a "clear indication" that relevant material evidence will be found, and that the method used to secure such evidence is safe and reliable (Matter of Abe A., 56 NY2d 288, 291). Here, it cannot be denied that the People had "probable cause" to believe defendant had murdered Ferraro. Defendant's girlfriend had voluntarily told police that she believed that defendant had shot someone. Next, the police had recovered a tan trench coat matching the description of the coat worn by Ferraro's assailant and a sawed-off shotgun from defendant's apartment. There was no error in conducting the lineup identification.

Turning to defendant's contention that County Court committed reversible error by failing to require the People to turn over to him all Grand Jury testimony and by not providing him with a copy of certain witnesses' Grand Jury testimony prior to their testimony at trial, we find that defendant failed to demonstrate that the People withheld any exculpatory evidence. While we recognize that the People have an ongoing duty to disclose to the defense any exculpatory material (see, Brady v Maryland, 373 US 83) and that a failure to properly disclose will result in a reversal of conviction if such evidence is material to the defense and likely to have changed the jury's verdict, no such conduct on the part of the People occurred in this case. County Court, after reviewing the Grand Jury minutes, properly found that all Brady material was turned over to defendant. We also turn away defendant's contention that the People erred in failing to provide him with a copy of Grand Jury testimony of certain witnesses before they testified at trial as required by People v Rosario (9 NY2d 286) (see, CPL 240.45). Prior to their opening statement, the People stated on the record that they were providing defendant with Rosario material. After two witnesses for the People testified, defendant claimed that he had not been provided with their Grand Jury testimony. While the People disputed this point, they gave defendant additional copies of the Grand Jury testimony and County Court informed defendant that he could recall the witnesses. Defendant declined.

Under similar circumstances this court has held that "lacking a demonstration of intentional misconduct, the * * * sanction of reversal would be inappropriate" *(People v Keppler,* 92 AD2d 1032, 1033; *cf. People v Donald,* 107 AD2d 818, 819-820). It is our view that defendant has failed to establish that the People violated either *Brady* or *Rosario* principles.

Defendant's remaining contentions, i.e., that he was denied the effective assistance of counsel, that he was denied a fair trial because of improper prosecutorial comments during the People's summation, that his guilt was not proven beyond a reasonable doubt, and that his sentence was improper, are meritless and require little comment.

While defendant admits that he chose to represent himself in the trial, he contends that County Court failed to adequately advise him of the risks he would encounter by proceeding *pro se.* Where, as here, a defendant elects to waive his right to counsel, the court has an obligation "to insure that he [is] aware of the dangers and disadvantages of self-representation before allowing him to proceed" *(People v Vivenzio,* 62 NY2d 775, 776). The only requirement on the court is to undertake a sufficiently searching inquiry to insure that defendant understands the dangers of giving up the right to counsel *(People v Sawyer,* 57 NY2d 12, 21, *cert denied* 459 US 1178; *see, People v Whitted,* 113 AD2d 454). The record reveals that County Court fully discharged its obligation to defendant by graphically describing the dangers inherent in defendant's decision to represent himself. County Court also informed defendant that it would approve any investigatory expenses that were material and necessary to the defense.

With respect to defendant's claim that he was prejudiced by improper prosecutorial remarks, we note that defendant did not object to the People's opening statement, thus not preserving an alleged error for review *(see,* CPL 470.05 [2]; *People v Nuccie,* 57 NY2d 818, 819), and our review of the record does not prompt us to review this issue in the interest of justice *(see,* CPL 470.15 [6] [a]; *People v King,* 105 AD2d 1015, 1016). Defendant's objection to the prosecutor's remarks in summation that defendant failed to make a closing statement immediately prompted County Court to give a lengthy curative instruction to the effect that defendant did not have to say anything if he so chose and the jury was not to draw any inference adverse to defendant. In view of the immediate curative instruction and the overwhelming evidence of guilt, this error did not deprive defendant of a fair trial *(see, People*

*v Crimmins,* 36 NY2d 230, 238; *People v Alexander,* 64 AD2d 668).

Viewing the evidence in the light most favorable to the People, as we must *(see, People v Lewis,* 64 NY2d 1111, 1112; *People v Kennedy,* 47 NY2d 196, 203), we hold that each element of the crime of murder in the second degree was proved beyond a reasonable doubt. Two eyewitnesses testified that they saw defendant enter the restaurant, fire one shot into the chest of Ferraro and immediately leave the restaurant. The Medical Examiner testified that the victim died from internal injuries caused by a slug fired from the shotgun found at defendant's apartment. It would be difficult to imagine more positive evidence of defendant's guilt.

Finally, we hold that the sentence imposed, an indeterminate term of imprisonment of 25 years to life, was perfectly proper and not unduly harsh or excessive. The sentence was within the statutory limits (Penal Law § 70.00 [2] [a]; [3] [a] [i]), and, in view of the presentence report and the heinous nature of the crime, was eminently just.

Judgment affirmed. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.