THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY MARK GENSICKI, Appellant.

Third Department, January 15, 1987

**APPEARANCES OF COUNSEL**

*John W. Winans* for appellant.

*Seymour Meadow, District Attorney (Valerie Friedlander* of counsel), for respondent.

**OPINION OF THE COURT**

WEISS, J.

On September 19, 1984, defendant was charged in a single-count indictment with robbery in the third degree, arising out of an incident at the Cumberland Farms store in the Town of Coxsackie on the morning of August 4, 1984. At trial, the store cashier testified that defendant entered the store, demanded money and threatened to hurt her if she failed to comply. The cashier stated that defendant kept his left hand in his pocket, leaving her with the impression he had a gun. She gave defendant $110 in cash and $20 in food stamps. Once defendant left, the cashier contacted the police and gave them a description of the perpetrator and his car, together with the license plate number. Defendant was apprehended the next day in the vehicle described, and found in possession of $30.91 in cash and $19 in food stamps. Defendant, who proceeded *pro se* at trial, essentially acknowledged his participation in the incident described, but maintained that no force was used and that the cashier voluntarily turned over the funds to him. At the conclusion of the trial, the jury found defendant guilty as charged.

On this appeal, defendant maintains that County Court erred in refusing his request for a change of assigned counsel and in allowing him to proceed *pro se*. We agree. To ensure an indigent defendant's right to the effective assistance of counsel, trial courts are required to closely evaluate any serious complaints concerning court-appointed counsel *(People v Medina,* 44 NY2d 199, 207; *People v McIntyre,* 36 NY2d 10, 17; *People v Gulley,* 89 AD2d 874, 875). A change of counsel request, however, is not to be casually granted but must be premised upon a showing of "good cause" *(People v Sawyer,* 57 NY2d 12, 18-19, *cert denied* 459 US 1178; *People v Medina, supra,* p 207). In this respect, it is relevant whether counsel is competent and has pursued appropriate measures on a defendant's behalf. A bald assertion that a defendant lacks confidence in his attorney is not sufficient. Nor is the fact that a disagreement exists on the eve of trial over appropriate trial tactics *(People v Medina, supra,* p 209). Delaying tactics are not to be condoned.

Here, defendant wrote two letters to County Judge Fromer

concerning James Keefe, his court-appointed attorney. In the first letter, dated October 19, 1984, defendant stated he was "really disgusted with the representation" provided, but did not request a change in counsel. Shortly thereafter, Judge Fromer denied Keefe's request for permission to withdraw from the case. By letter dated January 21, 1985, defendant apprised Judge Fromer that he had not heard from Keefe in over a month and explicitly requested a new lawyer. While it is apparent this request was also denied, the record does not include the basis for Judge Fromer's decision.

On the morning of February 5, 1985, the matter came on for trial before County Judge Battisti. At this juncture, defendant moved for permission to proceed *pro se,* a request clearly precipitated by his unwillingness to accept Keefe's representation. A review of the ensuing colloquy confirms that Judge Battisti patiently and adequately advised defendant of the risks attendant such a decision and made a "searching inquiry" to ensure that defendant's waiver of the right to counsel was knowing and intelligent *(see, People v Vivenzio,* 62 NY2d 775; *People v London,* 124 AD2d 254; *People v Whitted,* 113 AD2d 454; *cf. People v Sawyer,* 57 NY2d 12, 21, *supra; People v Tennant,* 96 AD2d 671). Keefe confirmed that he and defendant had had "fundamental disagreements" over the nature of the defense, and that defendant preferred to conduct the defense in his own fashion. Finding that this dispute did not warrant a substitution of counsel and after repeated warnings, Judge Battisti granted defendant's *pro se* request and directed Keefe to act as standby counsel.

Later that afternoon, following a *Sandoval* hearing, defendant again complained that his decision to proceed *pro se* was compelled by his dispute with Keefe. Defendant insisted that County Court's refusal to substitute new counsel left him no choice but to represent himself. In response, the court noted that defense counsel was able and had made the appropriate pretrial motions on defendant's behalf and that defendant was entitled to a trial without further delay. For his part, Keefe again moved to withdraw from the case and briefly recited the history of conflict between him and defendant, indicating that despite several conferences he was never able to comprehend what defense defendant insisted on pursuing. Keefe stated that he conferred with Judge Fromer on several occasions, but the latter refused to relieve him as counsel ostensibly because defendant had previously rejected virtually every other attorney in Greene County as incompetent. Keefe also acknowl-

edged not responding to several phone calls from defendant, explaining "nothing new was developing with his case". Judge Battisti determined that since defendant had already elected to proceed *pro se,* he was bound by that determination. The trial continued, with Keefe assisting defendant during his direct examination and on summation.

As the foregoing illustrates, this is not an instance where defendant's objections to counsel were registered for the first time on the eve of trial *(cf. People v Medina,* 44 NY2d 199, *supra).* Even assuming the October 19, 1984 letter failed to alert Judge Fromer to defendant's request for new counsel, there is no doubt the January 21, 1985 letter achieved that objective. The difficulty with this case is that while it appears Judge Fromer might properly have rejected defendant's initial requests for substitute counsel, no record exists as to the court's actual response. That Judge Fromer summarily rejected the request based on his knowledge of defendant's past conduct and the fact that Keefe had actively participated in his case is a matter of speculation based on inferences from the record and Keefe's hearsay account of their discussions. In his January letter, defendant made specific allegations that counsel was neglecting his case. Most importantly, Keefe confirmed that a fundamental disagreement existed between him and defendant several months in advance of trial, a factor that heightens the absence of a close evaluation of the matter on the record by Judge Fromer.

On this record, we cannot discern whether defendant's initial attempts to have substitute counsel appointed were seriously reviewed or summarily dismissed. Moreover, we disagree with Judge Battisti's treatment of defendant's motion as a last-minute controversy over trial tactics. We have already indicated it was not. We fully recognize that Judge Battisti conducted a "searching inquiry" as to whether defendant appreciated the disadvantages of proceeding *pro se,* but such inquiry does not alleviate the earlier failure to examine defendant's request for new counsel. Consequently, defendant's perceived dilemma that he had "no choice in the matter" of representation was more real than not *(see, People v Sawyer,* 57 NY2d 12, 20, *supra).*

The fact that defendant's actual trial presentation was woefully inadequate does not, of itself, warrant a new trial *(see, People v Davis,* 49 NY2d 114, 120). Under the circumstances presented, however, there is a reasonable possibility that substitute counsel could have improved on defendant's

bizarre defense* *(cf. People v Navarro,* 96 AD2d 1126, 1127). Accordingly, we conclude that defendant's right to counsel was violated and that a new trial is in order, with new counsel assigned. Having so concluded, we need not reach any remaining issues.

KANE, J. (dissenting). This record demonstrates that the requests by defendant for replacement of assigned counsel were properly denied by County Court for lack of any showing of "good cause" on the part of defendant of a need for such substitution *(see, People v Medina,* 44 NY2d 199, 208). It is abundantly clear that defendant's requests were founded either upon a last-minute attempt to delay the trial of the pending indictment, or upon his inherent dissatisfaction and disagreement with the criminal justice system and the basic tenets of criminal law.

Defendant is no stranger to the system, with a record of numerous arrests resulting in nine convictions—eight misdemeanors and one felony. He represented himself upon the trial of other charges on prior occasions and insisted that he be permitted to proceed *pro se* on this occasion. There is no question but that County Court exhaustively and painstakingly explained the perils and pitfalls facing defendant upon such an election, and, accordingly, after fulfillment of these legal requirements, directed his assigned counsel to act on standby during all proceedings that ensued *(see, People v Sawyer,* 57 NY2d 12, 21, *cert denied* 459 US 1178). Based upon the foregoing, and considering defendant's two years of college education and familiarity with general legal principles, the court acted properly *(see, People v McIntyre,* 36 NY2d 10).

The fact that, six months previously, defendant made a similar and unsuccessful request for removal of counsel should not require a reversal. The reasons for the prior denial of removal were articulated by defendant's counsel; namely, that

---

* In conducting his defense, defendant advised the jury during his opening statement that he was currently in jail and that he had not accepted a plea bargain. Prior to cross-examining the cashier, defendant asked that her direct testimony be read back to the jury and then defendant apparently refused to question her. Defendant then remained silent and apparently refused to cross-examine the next witness. Defendant called a character witness who testified that defendant had a reputation of being "very eccentric", "crazy" and "unorthodox". Defendant also took the stand on his own behalf and, on direct examination, admitted every element of the crime except the use of force. Additionally, several evidentiary errors were made which could have contributed to defendant's conviction, but defendant did not object.

he, as counsel to defendant since defendant's initial arraignment on the charge in question, was the only attorney remaining in Greene County who had not, on prior occasions, represented defendant and that they, too, had been accused of incompetency during the course of their defense of defendant.

In sum, what is before the court is a defendant, electing to chart his own way defending the charges against him, refusing to accept the advice and assistance of trained and experienced counsel and, following the inevitable result, asking the system he finds so abhorrent to relieve him of his folly. Defendant elected to testify on his own behalf. He admitted every element of the crime of robbery in detailed degree except the use of force. The jury accepted the testimony of the prosecution witnesses on the issue of force and found defendant guilty. The judgment should be affirmed.

MIKOLL and HARVEY, JJ., concur with WEISS, J.; MAHONEY, P. J., and KANE, J., dissent and vote to affirm in an opinion by KANE, J.

Judgment reversed, on the law, and matter remitted to the County Court of Greene County for a new trial.