■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS TERMOTTO, Appellant.—Judgment unanimously reversed on the law and indictment dismissed. Memorandum: The indictment charged defendant with larceny in the second degree by stealing more than $1,500 from Elizabeth Siver. The bill of particulars alleged that defendant committed the larceny by false pretenses. The court, however, instructed the jury on the elements of a larceny by trespassory taking and on several occasions refused the prosecutor's request for specific instructions on larceny by false pretense or false promise, ultimately ruling "I do not think the proof follows with that particular charge." In refusing to charge larceny by false promise or pretense, the court improperly changed the theory of prosecution from that alleged in the indictment as limited by the bill of particulars (see, People v Roberts, 72 NY2d 489; People v Charles, 61 NY2d 321, 328-329; People v Barnes, 50 NY2d 375, 379, n 3). Moreover, the court's ruling that the proof did not support that theory was tantamount to a trial order of dismissal (see, CPL 290.10 [1]). The court's error in submitting an improper charge to the jury mandates reversal and dismissal of the indictment. (Appeal from judgment of Monroe County Court, Maloy, J.—grand larceny, second degree.) Present—Callahan, J. P., Denman, Boomer, Balio and Lawton, JJ.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS TERMOTTO, Appellant.—Judgment reversed on the law

and new trial granted. Memorandum: Although a criminal defendant has the right to undertake his own representation, before the court can allow him to proceed *pro se* it must determine that the decision is knowing and intelligent *(see, People v McIntyre,* 36 NY2d 10, 17; *People v Williams,* 96 AD2d 740). In order to ascertain this, the court must undertake a searching inquiry to be assured that defendant understands the value of counsel and the dangers and disadvantages of giving up his fundamental right to counsel *(see, People v Kaltenbach,* 60 NY2d 797, 799; *People v Anderson,* 125 AD2d 580, 581). Because the trial court allowed defendant to proceed *pro se* without conducting a sufficiently searching inquiry, defendant's waiver of counsel was ineffective and a new trial is required *(see, People v Kaltenbach, supra; People v Sawyer,* 57 NY2d 12, 21-22, *cert denied* 459 US 1178). Further, the mere fact that defendant had appeared *pro se* on a prior criminal matter does not relieve the court of its duty to conduct its own inquiry.

We have reviewed defendant's remaining contentions and find them to be without merit.

All concur, except Callahan, J. P., and Boomer, J., who dissent and vote to affirm, in the following memorandum.

Callahan, J. P., and Boomer, J. (dissenting). We respectfully dissent. "Although the trial court did not conduct a formal inquiry of defendant's age, experience, education and knowledge of the hazards of *pro se* representation *(see, People v Kaltenbach,* 60 NY2d 797, 799; *People v Williams,* 96 AD2d 740), our review of the record reveals that defendant was 35 years old with a 20-year criminal record including a prior felony; that he had a thorough understanding of the criminal justice system and of the rights and remedies available to him; that he was articulate in advancing his legal arguments and was firm in his decision to represent himself" *(People v Reifsteck,* 134 AD2d 876, *lv denied* 70 NY2d 1010). This quotation fits almost precisely the facts of this case. Although defendant did not have an extensive criminal record, as did Reifsteck, he did represent himself in a trial on similar charges held three months previously in the same County Court. When questioned by the Trial Judge before the previous trial, he stated that he was 30 years old, he had graduated from college with a B.S. degree in biology, economics, and business. In addition, he had completed courses toward his Master's degree in business and was currently taking four courses at a divinity school. His work experience included corporate finance planning and consolidation of balance

sheets; marketing and sales as an employee of Xerox Corporation; corporate finance planning as an employee of Mobil Chemical Corporation; investment planning with Home Life Financial Group; and sales of insurance, mutual funds, real estate, and limited partnerships. He had also spent two years in West Germany as a financial planner. Concerning his knowledge of criminal law and procedure, defendant acknowledged that he had drawn and filed his own petition for a writ of habeas corpus in the United States District Court. The United States Magistrate found merit in the petition and determined that he would hear the case. Defendant also completed courses in business contract law in college.

Not only did the previous trial court elicit from defendant his age, education, and experience, but it also made defendant aware of the hazards of *pro se* representation, stating: "Now, you realize that in representing yourself you certainly had excellent counsel selected to represent you, Mr. Fahringer [his retained counsel on this case as well as the previous case] and Mr. DeMaria [his local counsel on both cases], who are all very experienced attorneys. The selection of a jury is an important aspect of the trial which an attorney, I feel it would be necessary, the questioning of witnesses is important. Organizing a defense is important. These are reasons why people have attorneys. So by waiving an attorney and representing yourself, you are going to be doing these functions, I hope you realize that."

Defendant replied that for his defense strategy he would rely upon simplicity and sincerity and would take "a very non-offensive position". The court warned that if it felt that defendant was "making this courtroom a forum" he would not permit defendant to represent himself. The court then offered to appoint an attorney for defendant to sit at the counsel table to advise him. In line with his trial strategy to assume a "very non-offensive position", defendant did not want anyone sitting at the counsel table. In response to the court's offer he said: "I appreciate that show of spirit, Your Honor. I think if I have any questions of the process, procedure, any technical questions, I think possibly Mr. DeMaria might be there, not necessarily in the courtroom, but I think he is available to coach me as long as he sees that I need it."

The court noted that it was sure that defendant discussed the matter of self-representation with Mr. DeMaria and that the court had in its possession a letter from Mr. Fahringer, which indicated that defendant had discussed the matter at some length with Mr. Fahringer and also with Mr. DeMaria.

Defendant acknowledged that was correct. The court told defendant that he had an absolute right to be represented by an attorney and to have one appointed without charge. Defendant insisted that he wanted to proceed *pro se.*

Following this exhaustive inquiry, the previous Trial Judge found that defendant "is aware of the dangers of representing himself, and it is his desire to represent himself, and it is a knowing decision". Thereafter, the defendant represented himself throughout the trial of the previous case.

When the present case came to trial, defendant had already discharged his retained counsel, Mr. Fahringer, and the court advised defendant of his right to be represented by counsel. The court further stated: "I understand that previously being advised of your right to counsel you waived your right to be represented by an attorney and consented to appear in your own behalf, is that the case?" Defendant replied that the court was correct. Defendant informed the court that he had been represented by counsel when motions were filed sometime ago but he had represented himself in the previous trial. The District Attorney informed the court that defendant was represented by counsel (Mr. Fahringer) on both indictments up to the eve of trial on the prior indictment, at which time counsel advised the court that defendant wished to represent himself and that he was asked pertinent questions and was allowed to proceed *pro se.* The court stated that it had consulted with the Judge who presided over the previous trial. The court also stated that defendant had previously advised the court that he had consented to proceed without an attorney in this case. Defendant stated that he had terminated the employment of Mr. Fahringer in both cases, and for a period of three months Mr. Fahringer had not represented him. Defendant stated that he did not want Mr. DeMaria to represent him in the case; that he had chosen to go *pro se: "I think I made that very clear."* The court told defendant that he was entitled to an assignment of an attorney if it was determined that he was indigent. He said that he was "fully aware" of that, but he did not wish to have an attorney assigned; he had "chosen not to." The court advised him of his right to have an attorney present in the courtroom to advise him and he replied that he had chosen not to have an attorney present.

Prior to trial, the court made the following statement pertinent to defendant's right to proceed *pro se:* "I determine that the defendant having been advised of his right to counsel on this and prior occasions has determined to waive the right of counsel. That he has consented to appear *pro se.* That he

had prior counsel in this matter who represented him in extensive omnibus motions at which he attended and was advised of the rights thereof. That being advised of his right to have an attorney present to consult with, although he would conduct his own defense in this matter, he deferred from having such attorney present and that he discharged his prior attorney and also advises that the defendant previously has been involved in a matter that he conducted the trial *pro se."*

During trial, defendant was a most articulate witness. Moreover, in his summation, in keeping with his trial strategy, defendant emphasized his sincerity and his "non-offensive position", and explained the reason he was not appearing by counsel. This explanation reinforces the conclusion that defendant's waiver of an attorney was knowingly made. He told the jury: "As I stand here before you, you hear me speak, you watch me and will have an opportunity to get to know me, to get a feeling of who I am, what motivates me, and the things that I do and perhaps why I had done things in the past the way I chose to do things. I could have come here with an attorney and had him speak on my behalf. I chose not to. This was a bit of willful and knowing decision on my behalf and I thought that by the nature of this case it was extremely important that you get to know me and get a sense of what my intent is in all my actions and who I am. * * * I could have come in and have a high powered attorney to defend me and taken advantage of every loophole, maneuver. I chose not to do that."

We conclude that although the trial court did not repeat the admonition of the previous trial court about the danger of self-representation, there is no doubt that defendant, who had been represented by outstanding counsel on both this and the previous case and had fully discussed the matter with them, and who had been advised by the previous court and had conducted his own defense in the previous trial, was fully aware of the dangers of self-representation and had made a knowing determination to represent himself. Under these circumstances, the repetition by the present court of the admonitions concerning the dangers of self-representation would have been a ritualistic incantation devoid of any practical effect. (Appeal from judgment of Monroe County Court, Dugan, J.—grand larceny, second degree.) Present—Callahan, J. P., Denman, Boomer, Balio and Lawton, JJ.