■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JERRY GLOSTER, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Goldman, J.), rendered November 5, 1982, convicting him of murder in the second degree and attempted murder in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

It is undisputed that a criminal defendant is entitled to representation by an attorney of his own choosing (People v

*Sawyer,* 57 NY2d 12, 18, *cert denied* 459 US 1178; *People v Medina,* 44 NY2d 199, 207). "As a necessary corollary to this right, a defendant must be accorded a reasonable opportunity to select and retain his counsel" *(People v Arroyave,* 49 NY2d 264, 270). On the other hand, before a substitution of counsel is granted, good cause must be demonstrated *(People v Sawyer, supra,* at 18; *People v Willis,* 147 AD2d 727). The most compelling reasons would be a showing of ineffectiveness of counsel "by reason of professional incompetence or * * * a personal impediment which handicaps his or her professional performance" *(People v Sawyer, supra,* at 19). Whether a continuance for the purpose of selecting another attorney should be granted is largely within the discretion of the trial court *(see, People v Arroyave, supra).*

"[A] request to change counsel previously retained or assigned must be addressed to the Trial Judge's discretion to insure that the defendant's purported exercise of the right does not serve to delay or obstruct the criminal proceedings * * *.

"It is no abuse of discretion for a trial court, acting on the eve of trial, to consider the interests of judicial economy [or] the integrity of the criminal process * * * in denying [such] a motion" *(People v Tineo,* 64 NY2d 531, 536-537).

In light of the facts in this record, the defendant was not deprived of his right to counsel of his choosing. He had been represented by either two or three different attorneys prior to his representation by the assigned counsel who represented him at the pretrial hearings and at the time of trial. The defendant made his request to relieve counsel and for an adjournment for the purpose of obtaining new counsel on the very morning that jury selection was scheduled to commence and after assigned counsel had represented him the previous day at the pretrial hearings and had requested an adjournment, which was denied, prior to the commencement of the pretrial hearings. Nothing in the record indicates that the defendant had previously complained about counsel's representation *(see, People v Peterkin,* 133 AD2d 472). Therefore, it can be inferred that when assigned counsel's request for an adjournment was denied, the defendant tried to delay the trial by requesting a new attorney. Moreover, at the time of trial, over one year had elapsed since the commencement of the criminal action against him, giving him more than a reasonable opportunity before the eve of trial to retain private counsel. Therefore, the request for an adjournment, at that time, for the purpose of retaining counsel was properly denied

as the record is devoid of any evidence of exigent circumstances having prevented the defendant from doing so up to that point *(see, People v Arroyave,* 49 NY2d 264, *supra; People v Branch,* 155 AD2d 473, 474; *People v Gibson,* 137 AD2d 553, 554). Also, the defendant's own conclusory statements that assigned counsel was not effectively handling his case does not establish "good cause" entitling him to relief *(People v Anderson,* 127 AD2d 885, 887; *see, People v Williams,* 114 AD2d 870). That the request was made after spitting in his attorney's face subsequent to convincing the court to allow him a brief conference with defense counsel outside the courtroom, further supports the court's determination that the defendant was acting solely to delay his trial in making such a request. Thus, the court was properly unwilling to allow the defendant to delay the proceedings by making his request during the pendency of the proceedings *(see, People v Branch, supra,* at 474; *People v Brown,* 134 AD2d 438, 440). In view of the lateness of the defendant's request, i.e., at trial, it was not an improvident exercise of discretion for the court to conclude that this was a dilatory tactic and to reject the request *(see, People v Branch, supra,* at 474; *People v Rascio,* 136 AD2d 575, 576).

Once the defendant indicated that he would not cooperate with counsel, the court did not err in relieving counsel and determining that the defendant would have to represent himself at trial *(see, United States ex rel. Testamark v Vincent,* 496 F2d 641, 643, *cert denied* 421 US 951 [defendant given choice of proceeding with appointed counsel or *pro se* and chose neither; defendant's actions constituted waiver of right to counsel]). "While courts must 'indulge every reasonable presumption against waiver', and cannot presume acquiescence in the loss of fundamental rights * * * a defendant's refusal without good cause to proceed with able appointed counsel is a 'voluntary' waiver of his right to counsel" *(Pizzaro v Harris,* 507 F Supp 642, 646, quoting *Maynard v Meachum,* 545 F2d 273, 278). Although effective waiver of counsel must be the product of free, meaningful choice, a criminal defendant may be asked to choose between waiver and another course of action as long as the choice presented is not constitutionally offensive *(see, Maynard v Meachum, supra; People v Sawyer,* 57 NY2d 12, *cert denied* 459 US 1178, *supra).* Here, the court correctly found that the defendant intentionally waived any right to counsel when the court gave him a choice of going to trial with assigned counsel or representing himself and his only response was that he would not cooperate with

counsel and that he wanted to retain an attorney. In light of the court's offer to make counsel available to him and the defendant's calculatedly disruptive and obstreperous conduct, the court's actions were appropriate.

Immediately prior to the entry of the prospective jurors, the defendant refused to remain in the courtroom. The court directed that the defendant be removed. The court correctly found that he had, by his conduct, knowingly, intelligently and voluntarily waived his right to be present. It is well settled that although a defendant's right to be present at trial is encompassed within the confrontation clauses of the State and Federal Constitutions, that right "may, as a general matter, be waived under both Constitutions" *(People v Parker,* 57 NY2d 136, 139; *see also, Illinois v Allen,* 397 US 337, 343). Under the circumstances herein, where the court had given the defendant warning of the possibility that he would be removed from the courtroom and that the trial would continue in his absence, and where the defendant repeatedly demanded to be removed and continually refused to cooperate with the court, the court had no choice but to grant his request and remove him from the courtroom and continue the trial in his absence *(Illinois v Allen, supra,* at 343-344; CPL 340.50 [3]; *People v Ascheim,* 119 AD2d 757). Accordingly, the trial court's exercise of discretion in removing the defendant from the courtroom was not improvident. Jury selection commenced with the assigned counsel serving as legal advisor. On the second day, the court reopened voir dire with both the defendant and counsel present. The defendant and counsel were present for the trial.

The defendant further contends that the People failed to prove his guilt beyond a reasonable doubt. Viewing the evidence adduced at trial in the light most favorable to the People *(People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (CPL 470.15 [5]). Edward Rosa gave credible and consistent testimony that he saw the defendant, accompanied by two other men, shoot his brother Gustavo with a shotgun; that he had spent 15 to 20 minutes in his company in a well-lighted hallway; that he himself was shot twice by one of the three men before they fled; and that, prior to seeing him in court, he knew the defendant as "Jerry". This testimony alone was sufficient to support the verdict. Additionally, Rosa's testimony about his brother's demand for

the return of certain gold jewelry redeemed from a pawn shop supplied the motive for the shooting. Moreover, Rosa's testimony of the number of shots fired was corroborated by his wounds and the testimony of Michelle and Georgia Andrews as to the number of shots they heard, the number of men they saw, the description of the men, the amount of time the men were there, and that the men were usually around Newkirk Avenue. The physical evidence also supports Rosa's account of the incident. Officer Adams recovered three spent shotgun shells of two different calibers from the scene near where Rosa described the men as standing when they fired. Therefore, the defendant's contention that Rosa's trial testimony should not have been believed by the jury is without merit.

Furthermore, the resolution of issues relating to the credibility as well as the weight to be accorded to the evidence presented, are primarily questions to be determined by the jury which saw, and heard the witnesses (see, People v Gaimari, 176 NY 84, 94). Its determination should be accorded great weight on appeal and should not be disturbed unless clearly unsupported by the record (see, People v Garafolo, 44 AD2d 86, 88). Here, the jury heard all of the testimony and concluded that the version of the crime presented by the People's witnesses was accurate. Because this determination is supported by the record, it should not be disturbed. Moreover, the evidence at trial established that Rosa's pretrial identification of the defendant, brought out in response to the defendant's cross-examination of Edward Rosa about that issue, was reliable. Despite Rosa's being hospitalized and under medication at the time he made the photographic identification of the defendant, he testified that he recognized the defendant in the photograph right away as "Jerry"—the person who had done the shooting. The jury heard the evidence as to Rosa's physical condition and nonetheless determined that the identification was reliable. In any event, Rosa identified the defendant in court as being the person whom he met on July 30, 1981. Accordingly, the fact of Rosa's condition at the time he made the photographic identification is of little significance and does not undermine the jury's verdict.

We have considered the defendant's remaining contentions, including those raised in his supplemental *pro se* brief, and find them to be either unpreserved for appellate review or without merit. Bracken, J. P., Lawrence, Miller and O'Brien, JJ., concur.