OPINION OF THE COURT
David Friedman, J.
The question presented is whether an identification proce *1001 dure is unduly suggestive where the police show a complaining witness six photographs successively, that is, one photograph at a time, rather than showing them together as an array. I conclude that such a procedure is permissible. In fact, psychological research indicates that such a procedure results in a more reliable identification than a traditional photo array.
The credible testimony elicited at a Wade hearing indicates that at 10:15 p.m. on October 23, 1994, defendant entered a meat market on Nostrand Avenue in Brooklyn. He approached Randy Persaud, who was standing behind the counter, produced a sawed-off shotgun, demanded money, jumped over the counter and removed money from the cash register. At about the same time Winston Taylor, hearing the commotion, came from the back of the store and was threatened by defendant who then fled.
The following day Detective Kristoffersen, while investigating the robbery, learned that Persaud knew the defendant as he had previously shoplifted from the store. Persaud provided a description of defendant as well as a nickname, "KK”. Detective Kristoffersen recognized the nickname from another case and also found that it appeared in a police department nickname file. The detective obtained a photograph of defendant as well as photographs of five other young men resembling him and proceeded to Persaud’s residence to show him the photographs.
In showing Persaud the pictures the detective placed the six photographs face up in a single stack with defendant’s photograph being the fifth in the stack. Detective Kristoffersen asked Persaud if he recognized the top photograph and Persaud answered in the negative. That photograph was removed and placed face down on the table with the next photograph in the pile being revealed. This procedure continued successively until the fifth photograph was reached when Persaud immediately identified defendant. Defendant’s photograph was then removed and placed face down on the table thereby exposing the sixth, and final, photograph which Persaud stated was not the perpetrator. Subsequently defendant was arrested and placed in a lineup. Both Persaud and Taylor positively identified defendant as the perpetrator.
Defendant contends that the out-of-court and any in-court identifications should be suppressed. He argues that the sequential procedure used to show the photographs to Persaud *1002 was unduly suggestive and that the appropriate way of showing the photographs was as an array in a folder. The result of the suggestiveness, maintains defendant, is to irreparably taint the lineup conducted afterwards, as well as any in-court identification. Concerning the lineup itself defendant argues further that the fillers were significantly different in appearance from himself especially as to age. This he asserts made the lineup unduly suggestive. In my view, these contentions lack merit.
Discussion of the procedure used to show the photographs to Persaud must begin with recognition of the general principle that the police may not display a single photograph to a witness. Exhibition of a single photograph to a witness has been widely condemned, inter alla, because of the danger that such a procedure suggests to the witness that the police believe the person shown is the perpetrator (Matter of James H., 34 NY2d 814). Similarly, photographic arrays will be deemed impermissibly suggestive when some characteristic of one picture draws the viewer’s attention to defendant’s picture, or the array is so arranged as to draw attention only to the defendant, thereby indicating that the police have made a particular selection (People v Rawlings, 159 AD2d 655; People v Finnerty, 152 AD2d 635). Hence, in evaluating the procedure used by Detective Kristoffersen the inquiry must focus on these concerns.
In examining Kristoffersen’s procedure it is evident that the witness’s attention was not drawn to one particular photograph. In fact, even after Persaud positively identified the fifth photograph as being the perpetrator, Kristoffersen showed him the sixth photograph. This further served to detract from any possibility that Persaud would believe that Kristoffersen had made a particular selection. Nor did defendant’s photograph contain some unique characteristic highlighting it from among the other photographs. Considered otherwise, while it is true that the procedure used contains characteristics of a single photo display, namely, the witness being exposed to only one picture at a time, it is actually a hybrid procedure having similarities to a traditional photo array since six photographs were used in close succession. Thus, the concerns that are generated by the display of a single photograph are absent from the procedure Kristoffersen used.
Significantly, it may even be argued that the procedure used actually produces a greater possibility of reliable identification than a traditional photo array in which all of the photographs *1003 are exhibited together. In this regard at least one researcher, Dr. Siegfried Sporer, has concluded that the better procedure is to show the witness photographs sequentially (one at a time) for no more than a few seconds (Sparer, Eyewitness Identification Accuracy, Confidence, and Decision Times in Simultaneous and Sequential Lineups, 78 J Applied Psych, 22-23 [1993]; Studies Point to Flaws in Lineups of Suspects, NY Times, Jan. 17, 1995, at Cl).
In Dr. Sporer’s research, participants viewed a film of a crime in progress. Some subjects were thereafter required to select the perpetrator from a photo array, while others were required to select the perpetrator from a sequential display of photographs. Both the sequential display of photographs and the photo array utilized six photographs. Significantly, Dr. Sporer found that when witnesses viewed photographs of suspects sequentially, where none of the suspects were the real culprit, the rate of false identification was 38.9%. By contrast, when the suspects were displayed simultaneously in a traditional photo array the false identification rate jumped to 72.2% (Sparer, op. cit., at 30).
In all events it is clear that, whether viewed under the well-established principles governing this area of the law, or in light of the psychological research, the photographic identification procedure was not unduly suggestive. Additionally, and contrary to the contention of defendant, the fillers in both the lineup and photo display appeared similar to him in age, weight, height and skin tone so that there was no substantial likelihood that he would be singled out for identification (People v Chipp, 75 NY2d 327).
Accordingly, the motion to suppress is denied.