OPINION OF THE COURT
Robert S. Kreindler, J.
The People move, on notice to Rahim Thomas (Thomas), for an order placing Thomas in a lineup. In conjunction with the motion the People have annexed an order granting them an unrestricted lineup. Thomas has consented to the lineup and has submitted a detailed order as to how the People are to conduct the lineup. Among other requests, Thomas asks the court to order the People to conduct a double blind sequential lineup.
In deciding which order, if any, to sign, the court has considered the People’s motion and order dated October 23, 2001, the “affirmation in opposition” dated October 24, 2001, the exhibits and the attached order directing a double blind sequential lineup, the defendant’s memorandum of law dated October 26, 2001, the People’s “affirmation in opposition to Motion for Double Blind Sequential Lineup” dated October 26, 2001, and oral arguments made on October 25, 2001 and October 29, 2001.
The issue before the court is whether the court has the authority to direct the People to conduct a lineup in a specific manner and, if it has the authority, whether to exercise its discretion to so order.
The facts, as gleaned from the People’s application for the lineup, are that on October 17, 2001 a person was killed. On October 20, 2001, Thomas entered the 75th Precinct and admitted to the shooting of the above-noted person. Nowhere in the People’s application do they state that there exists any eyewitness to the shooting. At oral argument the Assistant District Attorney informed the court that there were six alleged eyewitnesses that were to view the lineup. Three of the witnesses had arrived at the scene with Thomas and three of the witnesses were with the victim. What these witnesses saw, the witnesses’ prior acquaintance with Thomas, the lighting condition, and the length of time the witnesses observed Thomas was unknown to the Assistant District Attorney.[1]
*489 On October 20, 2001, Thomas was arrested. Subsequently, a felony complaint was filed. Thomas is currently awaiting action of the Grand Jury.
Double Blind Sequential Lineup
In New York simultaneous lineups are the normal lineup procedure. In a simultaneous lineup the viewer sees all persons at the same time. The viewer is then asked if he or she sees anyone that he or she recognizes. In contrast, in the sequential lineup the viewer sees each person separately, one at a time, for as long as desired. The viewer is told that if he or she recognizes any person to so state.
The defendant has submitted numerous scientific articles which indicate that the sequential lineup is fairer than the simultaneous lineup. The studies indicate that the sequential lineup reduces the chance of misidentification, while having no effect on the rate of correct or accurate identifications (Wells and Seelau, Eyewitness Identification: Psychological Research and Legal Policy on Lineups, 1 Psychol, Pub Pol'y, & L 765; Park, Evidence Scholarship, Old and New, 75 Minn L Rev 849).[2] In other words the sequential lineup is better at weeding out inaccurate identification but has no effect on correct identifications. The studies also show that factors which may be suggestive in a simultaneous lineup have less of an effect on the viewer during a sequential lineup.
Psychologists speculate that in a simultaneous lineup the viewer subconsciously believes that he or she should select the person that most resembles the perpetrator (Sporer, Eyewitness Identification: Recognizing Faces of Other Ethnic Groups, An Integration of Theories, 7 Psychol, Pub Pol’y, & L 36;[3] Judges, Two Cheers for the Department of Justice’s Eyewitness Evidence: A Guide for Law Enforcement, 53 Ark L Rev 231). Since the viewer believes that the alleged perpetrator is in the lineup, the viewer will in all likelihood select a person from the lineup based upon the person who most closely depicts the perpetrator rather than from a recollection that the person is in fact the perpetrator. In a sequential lineup, the viewer
*490 performs a “recall oriented function” in that the viewer compares the person being viewed by him or her at the lineup with the person that he or she recalls as being involved in the incident (Devenport, Penrod, and Cutler, Eyewitness Identification Evidence: Evaluating Commonsense Evaluations, 3 Psychol, Pub Pol’y, & L 338). When the viewer of a sequential lineup observes a displayed person there is no other individual with whom the viewer can compare. Thus, any identification made during a sequential lineup is based on a recollection of the incident and not based upon a comparison with other fillers.
The People have stated that they do not have any scientific evidence rebutting these findings and that they are studying the problem and have scheduled a meeting within the week with one of the leading proponents of the sequential lineup.
At least in one out-of-state reported case, the police conducted a sequential lineup (State v Armstrong, 110 Wis 2d 555, 329 NW2d 386) and in one New York case the police used a sequential photo array (People v Blue, 165 Misc 2d 1000).[4] According to one study, “slightly less than 10%” of the police departments in the country use sequential lineups (3 Psychol, Pub PoTy, & L 338, 345 [using statistics in 1993 — citing a study by Wogalter, Malpass and Burger]).
A double blind lineup is where the administrator of the lineup knows neither the suspect nor the position or order which the suspect will be shown to the viewer (see, 53 Ark L Rev 231).
Lineup and the Constitution
In New York the preferable manner of conducting an identification procedure is a lineup (People v Fletcher, 178 AD2d 776, 777; People v Thomas, 147 AD2d 510, 512; People v Garcia, 115 AD2d 617, 618; see also, Stovall v Denno, 388 US 293, 302). New York courts have described the word “lineup” in terms of a simultaneous lineup (People v Adams, 53 NY2d 241, 249).
By making the lineup the preferable manner of conducting an identification procedure and using that term to refer to a si *491 multaneous lineup, the courts are stating that a simultaneous lineup is constitutionally permitted. The court takes judicial notice of the numerous decisions upholding the validity of lineups, which were conducted simultaneously. Although the courts have not specifically addressed the simultaneous aspect of the lineup, the inference is that simultaneous lineups are constitutional.
The court finds that a simultaneous lineup is constitutional.
The courts that have considered sequential lineups have similarly held that sequential lineups are constitutional (State v Armstrong, supra, 110 Wis 2d, at 577-578, 329 NW2d, at 397; People v Blue, supra, 165 Misc 2d, at 1002-1003).
The court is thus faced with the issue whether it has the power to direct the People to use one constitutional method above another constitutional method.[5]
Authority to Order Thomas to Participate in a Lineup
There exists no explicit (as opposed to implicit) statutory authority for the court to order a suspect to appear for a lineup preindictment. CPL 240.40 authorizes the court to order a defendant to appear for a lineup only after an indictment has been filed.[6]
In Matter of Abe A. (56 NY2d 288), the Court was faced with the issue of whether a court may order a person who has not been arrested to give a blood sample. After stating that there is no explicit statutory authority for a court to so order, the Court held that such orders fall within the parameters of the search warrant provisions of the CPL (id., at 294). Subsequent to Matter of Abe A., courts have held that ordering a person to stand in a lineup is covered by the Matter of Abe A. decision (People v Webb, 161 AD2d 1147, 1148; People v Shields, 155 AD2d 978; People v London, 124 AD2d 254, 256; Matter of Santucci v Andrews, 117 Misc 2d 616; for good discussion of this issue see, Matter of Gill, NYLJ, June 6, 2000, at 32, col 3 [Sup Ct, Westchester County, Rosato, J.]).[7]
This court, therefore, has the authority to issue an order compelling Thomas to appear for a lineup.
*492 Right of the Court to Direct the People to Conduct a Sequential Lineup
Three lower courts apparently have held that a lower court has no authority to compel the government to conduct a lineup in any particular manner, provided that the People conduct the lineup in a constitutionally permissible method (People v Franco, NYLJ, July 5, 2001, at 20, col 5 [Sup Ct, Bronx County, Barrett, J.]; People v Cassese, 1995 WL 251647 [Nassau County Ct, NY, Mar. 23, 1995, Kowtna, J.]; People v Guerea, 78 Misc 2d 907 [Crim Ct, Bronx County, Mazur, J.]). The lower court in People v Moses (126 AD2d 755) and the lower court in United States v Tyler (878 F2d 753) and one author (Miriam Hibel, New York Identification Law: The Wade Hearing: The Trial [Gould Pubis 2001 ed]) have held that the court has discretion to order the People to conduct a lineup in a particular manner.[8]
Since the authority of this court to order the lineup emanates from the decision in Matter of Abe A. (56 NY2d 288, supra), the court finds that certain language in the case is relevant to the issue of the court’s authority to direct the People to conduct the lineup in a particular manner. In Matter of Abe A., the Court said (id., at 297-298):
“Next, the method by which the authorized intrusion is to be accomplished must be safe, reliable and impose no more physical discomfort than is reasonably necessary (United States v Crowder, 543 F2d 312, supra; People v Scott, 21 Cal 3d 284; cf. Rochin v California, 342 US 165).”
The court reads this sentence as authorizing consideration of the “reliability” of a requested procedure as well as the “reasonable necessity” of the procedure. In other words, the court is to consider alternate methods. This is more explicitly stated at page 298, where the Court said:
“Finally, before authorizing the intrusion, the court must give careful consideration to the circumstances of the particular case. These should include, for instance, not only the probable worth of the evidence to the investigation, but the nature of alternative means, if any, for obtaining the evidence (People v Scott, 21 Cal 3d 284, 293, supra; *493 Matter of Barber v Rubin, 72 AD2d 347, 353, supra; cf. People v Teicher, 52 NY2d 638, 655, supra).”
The court is directed to see if other means are available. This court does not read this phrase as meaning that if there are other means available that the motion must be denied. This court reads the sentence as saying that if there is a better or lesser intrusive means available to accomplish the goal then a court should direct that those other more reliable or better methods be performed.
Further, a court has the inherent authority to control the content of its orders (see, Ladd v Stevenson, 112 NY 325). When a party seeks the judicial intervention of a court, the court need not comply with each and every detail requested. The court can modify, alter or deny a request made to it, provided that such modification complies with statutory law and the constitution.
As stated above sequential lineups comport with constitutional dictates and the court is authorized to compel attendance thereat by Matter of Abe A.
This court, therefore, finds that it has the authority or discretion to order a double blind sequential lineup.
Exercise of Discretion
In exercising the discretion as to what to order, the court considers the following:
1. The court’s electronic research, as well as the exhibits submitted by Thomas, reveals that the scientific community is unanimous in finding that sequential lineups are fairer and result in a more accurate identification (see, supra, 7 Psychol, Pub Pol’y, & L 36 [collecting all the studies conducted until March 2001]). The court has been unable to find a single scientific article criticizing the sequential lineup or criticizing the scientific method used by the psychologists in their experiments.
2. Weighing heavily against the exercise of the court’s discretion is the concept of separation of powers. Generally, a court should not interfere with preindictment investigatory procedures by the executive branch. Interference with executive prerogatives should be undertaken only where necessary.
3. As Professor Randolph N. Jonakait, in his article in 25 Loyola of Los Angeles Law Review 673 entitled Symposium: Does Evidence Law Matter? The Connections Between Evidence Rules, Social Values and Political Realities, states, the law *494 should not only be concerned with the rules of evidence and the constitution, but should also focus on the accuracy of the information received by the jury. As the professor points out in the field of identification law, the law has focused on rules of evidence and the Constitution and not on the accuracy of the identification or how to make a victim’s identification more reliable (see generally, id., at 679-680). The scientific data in this area date back to at least 1981, 20 years ago. The law has been slow in catching up to the scientific data. A potential defendant should undergo the most accurate identification procedure possible under the circumstances of the case and should not be required to undergo a less fair procedure where there are fairer procedures available merely because the executive branch of government has been slow to keep up with scientific knowledge.
4. The court, as mandated by Matter of Abe A., should also consider the circumstances of the case. The People have taken the position that the court lacks the authority to order the sequential lineup. Information received by this court from the District Attorney indicates that some of the witnesses may have known the defendant. The court does not know the extent or length of time that any of the witnesses were able to observe the suspect. The court is aware that there was a confession. However, the details of the confession are not disclosed. These facts are relevant to this court’s exercise of discretion because if there is only a minimal possibility of misidentification then the weighty consideration of separation of powers may well outweigh all other factors. However, since the People have failed to supply this information, the court considers this case to be one where the witnesses had little opportunity to observe the crime, and there is a real possibility of misidentification.
5. The additional inconvenience of requiring law enforcement agents to conduct a double blind sequential lineup rather than a simultaneous lineup is minimal if not nonexistent. The government must obtain a neutral administrator and the fillers must be viewed one at time. There will also be no economic effect on law enforcement agencies in conducting the double blind lineup.
Balancing all of the above considerations, the court directs that the Department of Correction produce Thomas for a lineup at the location requested by the District Attorney. The lineup is to be conducted as a double blind sequential lineup as described above.
*495 All other requests by Thomas are denied.[9]
The court reminds the People that the defendant has a right to counsel at the lineup and that defense counsel cannot be excluded when instructions are given to the viewers of the lineup (People v Brinson, 186 AD2d 1063).
The Capital Defender’s office will continue to represent Thomas until arraignment on the indictment or dismissal of the charges. The Capital Defender is directed to make a motion to be relieved at the arraignment.

. Prior to oral argument, this court was prepared to deny the application because the People had failed to show that the lineup had any evidentiary value, but Thomas consented to the lineup and there was no opposition to *489 that portion of the motion. Absent this information there was no “clear indication” that a lineup would supply probative evidence CMatter of Abe A., 56 NY2d 288, 297).

. Psychol, Pub Pol’y, & L represents the publication known as Psychology, Public Policy, and Law.

. The article was written in March 2001 by Dr. Siegfried Ludwig Sporer and integrates all the studies that have been conducted until March of 2001.

. Both sides agree that the New Jersey Attorney General recommends that lineups be conducted sequentially and that the United States Attorney General has recommended that lineups be conducted sequentially. It is also noted that voice lineups are of necessity conducted sequentially. The articles this court has read indicate that the United States Attorney General has not indicated a preference for sequential lineups over simultaneous lineups (53 Ark L Rev 231).

. Contrary to the People’s argument no court can read this decision as stating that a simultaneous lineup violates the Constitution.

. This is clearly seen from the unnumbered paragraph in CPL 240.40. The defendant’s argument to the contrary is rejected.

. The People in their memorandum of law cite Matter of Abe A. as authority for the court to issue an order to compel Thomas to stand in a lineup.

. Contrary to the People’s position should this court order them to conduct a sequential lineup, this court will not be the first court to compel the government to conduct a lineup in a particular manner. Further, as shown above, the cases are in conflict and this court will not be creating new law, but will add its voice to the divergent opinions already existing.

. The court will not direct law enforcement agents as to what should be told to the viewers of the lineup, or any other matter requested by Thomas.