OPINION OF THE COURT
Lawrence Knipel, J.
The instant proceeding is brought to compel the respondent, Raji Wilson, to participate in an identification lineup in connection with a pending criminal investigation.
On January 14, 2002, a woman was forced off an elevator at knifepoint and then raped and sodomized. The victim subsequently selected a photograph of the respondent as that of the perpetrator and indicated an ability to positively identify the perpetrator in a lineup. The petitioner contends that the relief *225 sought should be granted because (1) probable cause exists to believe that the respondent committed a crime, (2) the lineup procedure will likely yield relevant material evidence, (3) the method used to secure the evidence is safe and reliable, and (4) the order would not violate any of the respondent’s rights under the Fourth, Fifth or Fourteenth Amendments to the United States Constitution or the Constitution of the State of New York.
In opposition, the Legal Aid Society on behalf of the respondent does not oppose the issuance of an order for a lineup. However, it is requested that “[p]ursuant to notions of fundamental fairness,” the lineup be conducted as a double-blind sequential lineup to increase its accuracy and fairness. According to the respondent, sequential lineup procedures have been shown by social science research “to significantly heighten the validity and accuracy of eyewitness evidence.” Sequential lineups, it is argued, significantly cut the rate at which an innocent person is identified as the perpetrator, avoid the temptation present in simultaneous lineups to choose the participant who most resembles the perpetrator even if none of the participants truly match him, and do not reduce the rate of accurate identifications or create undue burdens for law enforcement. To avoid the risk of unintentional cues from investigators who know the identity of the suspect, it is requested that the lineup be administered by one who does not know the suspect’s identity, or by one who knows the identity of the suspect but who does not know which member of the lineup is being shown to the witness. The respondent submits an order containing some 55 different directives concerning how to operate the lineup.
The People oppose the respondent’s application for a double-blind sequential lineup, arguing that a nonsuggestive simultaneous lineup is a reliable, constitutional identification procedure and that there are unresolved questions concerning whether a sequential corporeal lineup is superior to a simultaneous corporeal lineup. Requiring a sequential lineup, it is argued, would also impose significant costs on law enforcement agencies and would be an inappropriate exercise of judicial authority.
Both parties declined the court’s offer to conduct a full evi-dentiary hearing into the relative merits of the science underlying sequential, simultaneous ■ and double-blind lineup procedures. They have instead consented to submission of this matter for determination on the papers submitted, including the e-mails of the People’s expert, Professor Gary Wells.
*226 It is uncontested that the court has the power and authority to order a preindictment lineup (see, Matter of Abe A., 56 NY2d 288; People v Webb, 161 AD2d 1147; People v Shields, 155 AD2d 978). It is also uncontested that the simultaneous lineup procedure the People want to use is constitutional (see, People v Chipp, 75 NY2d 327; Matter of Thomas, 189 Misc 2d 487). However, the People argue that the respondent’s application that the lineup be conducted in a double-blind sequential manner asks the court to perform a prosecutorial or legislative function, and that granting the application would be “an inappropriate exercise of judicial authority” since it would run afoul of the doctrine of separation of power (cf., People v Martinez, 2001 NY Slip Op 50130[U] [Sup Ct, NY County]; People v Franco, NYLJ, July 5, 2001, at 20, col 5 [Sup Ct, Bronx County]). This court disagrees.
The Supreme Court of the State of New York has general original jurisdiction in law and equity, vesting in this court the inherent power to do all things reasonably necessary for the administration of justice within the scope of its jurisdiction (NY Const, art VI, § 7 [a]; Sohn v Calderon, 78 NY2d 755, 766 [the Supreme Court is competent to entertain all causes of action unless its jurisdiction has been specifically proscribed and to that extent its powers are unlimited and unqualified]; Matter of Association of Bar of City of N.Y., 222 App Div 580; People ex rel. Doe v Beaudoin, 102 AD2d 359, 363 [a Supreme Court Justice is vested with inherent plenary power to fashion any remedy necessary for the proper administration of justice]; Ansonia Assoc. v Ansonia Residents’ Assn., 78 AD2d 211, 216 [the Supreme Court is empowered to grant the relief to which plaintiff is entitled even though it differs from the relief sought]; People v Cirillo, 100 Misc 2d 527, 531). Although “State courts have the responsibility equally with the Federal courts to guard, enforce and protect every right guaranteed or secured by the Constitution of the United States,” this court is not limited to passing on the constitutionality of a certain action, and it “may do all things reasonably necessary for administration of justice within the scope of its jurisdiction” (People v Zimmer, 166 Misc 2d 256, 259; see, People ex rel. Doe v Beaudoin, supra; cf., Illinois v Lafayette, 462 US 640, 647 ["Our role is to assure against violations of the Constitution”]). Beyond mere constitutionality, the relative reliability of the proposed procedure is an appropriate sphere of judicial inquiry.
This court also has no interest in or intention of micromanaging the District Attorney’s affairs or interfering with his *227 discretion of whom, what or when to prosecute (cf., People v Di Falco, 44 NY2d 482; People v Murray, 129 AD2d 319, affd sub nom. People v Robles, 72 NY2d 689; People ex rel. Doe v Beaudoin, supra, 102 AD2d at 365). This court instead adheres to its traditional role of balancing the petitioner’s interest in investigating and prosecuting those who commit crimes against a suspect’s liberty interest. Even the well-placed deference afforded to classic lineup procedures must yield if inconsistent with unambiguous scientific evidence.
The People acknowledge the November 7, 2001 order of this court (Kreindler, J.), which granted a sequential double-blinded lineup in Matter of Thomas (supra), but argue that at the time Thomas was decided, the District Attorney’s office had not completed its own evaluation of sequential lineups and was unaware of any studies questioning the efficacy of those lineups. The People now take issue with the statement in Thomas that the scientific community was unanimous in concluding that sequential lineups were fairer and yielded more accurate identifications than simultaneous lineups.
After the decision in Thomas, Professor Gary Wells, a proponent of sequential lineups and a participant in the preparation of the guidelines of the Department of Justice and the New Jersey Attorney General’s office regarding eyewitness evidence, expressed the opinion that there is a slight loss in correct identifications that “offsets somewhat the reduction in false identifications” and that researchers have not fully resolved the issue. Other researchers have noted that in cases involving multiple perpetrators or child witnesses sequential lineups may be inferior to simultaneous lineups. Further, the researchers’ studies involved viewing photographs or videotapes in controlled experiments. Apparently none tested the viewing of live lineups and none involved a real criminal investigation. Moreover, some researchers ascribe the difference between sequential and simultaneous lineups as due to a witness’s employing a stricter criterion when viewing a sequential lineup, and conclude that further study is required before sequential lineups are uniformly recommended as the preferred identification procedure. In addition, the People contend that implementing sequential lineups would be costly since it “would require the expenditure of scarce resources and would take a considerable amount of time to accomplish,” would force the People “to resolve complex questions in a hasty manner” and would “create a need * * * to educate the public.”
Undoubtably, a substantial body of data has recently arisen supporting the reliability of sequential lineup procedures. *228 Indeed, the data is significant enough to have influenced guidelines issued by the United States Department of Justice and the Attorney General of the State of New Jersey. However, this body of evidence is neither unequivocal or complete. Reasonable minds can disagree over appropriate conclusions to be drawn from the studies, the need for more studies, and the additional costs that would result from the adoption of a sequential lineup procedure, especially the 55-step procedure proposed by the respondent.
In double-blind testing, not only the subject, but the person conducting the test also does not know which response is being sought. This prevents the tester from skewing, even unintentionally, the test result. Double-blind testing has long been a near universally accepted staple of scientific research. The People’s own expert clearly states that while there may not be “100% agreement among all experts” on the desirability of sequential lineups under all circumstances “[t]he same is not true of double-blind testing,” which he describes as “something for which there is no disagreement among experts at all.” In another communication, Professor Wells states “I would defend your procedures if you did simultaneous blind.” The People have not raised any questions as to the superiority of double-blind testing, and complain of no implementation costs. In light of the apparent unanimity of expert opinion as to the benefits and superiority of double-blind testing, the branch of the respondent’s application to have the lineup conducted in a double-blind fashion is granted. In doing so, any oificer who accompanies the witness into the viewing area shall not know which participant is the target of the investigation.
Accordingly, the People’s application to compel the respondent to participate in a lineup is granted, upon consent. The respondent’s application is granted to the extent that the lineup shall be conducted in a double-blind fashion and is otherwise denied. The respondent is directed to participate in a lineup that is conducted in a double-blind fashion as described above.