OPINION OF THE COURT
Barbara Jaffe, J.
This decision addresses the authority of a judge of the New York City Criminal Court to issue an order compelling the prosecution to conduct a double-blind, sequential lineup.
*450 I. Procedural Background
On September 15, 2002, defendant M.A. was seen in the Bronx driving a Honda which had been reported stolen at gunpoint two days before in New York County. He was arrested, charged with criminal possession of stolen property in the third degree and related offenses, and released on bail.
On September 19, 2002, a felony complaint charging defendant with first degree robbery of the Honda was filed in this court and a warrant for defendant’s arrest was issued. On September 24, 2002, the People, on notice to defendant, asked this court to sign an order directing the Department of Correction to produce defendant for a lineup.[1] Defendant did not oppose the order, but requested an adjournment to September 26, 2002, to file a motion for an order directing the prosecution to conduct a double-blind, sequential lineup. Defendant was then arraigned on the felony complaint and bail was set. The case was adjourned to September 26 for the filing of defendant’s motion.
On September 26, defendant filed and served his motion and the People filed a response. Following oral argument, this court signed the People’s order and denied defendant’s motion from the bench for the reasons that follow. The case was adjourned to Part F on October 4, 2002, the CPL 180.80 date.[2]
II. Parties’ Contentions
Defendant asserts that fundamental fairness requires this court to direct the prosecution to conduct a double-blind, sequential lineup procedure.[3] He relies on the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and article I, §§ 2, 5, 6 and 11 of the New *451 York State Constitution. He claims that the greater accuracy of the double-blind, sequential lineup procedure constitutes a lesser intrusion on his right to be free of unreasonable searches and seizures. Defendant also cites scientific studies reporting on the unreliability of eyewitness identification and the distorting impact certain identification procedures have on an eyewitness’ ability to accurately identify a suspect, and other studies purporting to establish the greater reliability of double-blind and/or sequential lineups. Defendant further avers that this court has the authority to sign the proposed order as it would merely modify the lineup order. He cites decisions upholding the authority of the New York State Supreme Court and County Courts to issue such orders.
The People argue that the issuance of an order directing that the police to hold a double-blind and/or sequential lineup constitutes an inappropriate exercise of judicial authority over prosecutorial or legislative functions. They dispute the alleged superiority of the double-blind, sequential procedure and observe that the simultaneous lineup procedure has been repeatedly upheld as constitutional. They also maintain that defendant’s remedy for an unconstitutionally conducted identification procedure is suppression.
III. Analysis
As defendant did not challenge this court’s authority to issue a lineup order while the felony complaint was pending, the court will address the issue to the extent of observing that several courts have held that such an order may issue despite the pendency of a felony complaint. (See e.g. People v Pastorius, 272 AD2d 944 [4th Dept 2000], lv denied 95 NY2d 907; People v Shields, 155 AD2d 978 [4th Dept 1989], lv denied 75 NY2d 818 [1990] [rejecting lower court decisions holding to contrary]; Matter of Thomas, 189 Misc 2d 487, 491 [Sup Ct, Kings County 2001]; People v Patterson, NYLJ, Apr. 14, 1998, at 30, col 6 [Sup Ct, Nassau County]; People v Odierno, 121 Misc 2d 323, 327 [Sup Ct, Bronx County 1983] [upholding authority but not absent probable cause]; see Hibel, New York Identification Law, at 224 [2002].) Those courts relied on Matter of Abe A. (56 NY2d 288, 293, 294 [1982]), where the Court of Appeals derived Criminal Term’s authority to compel the taking of a blood sample from an uncharged suspect from the court’s authority *452 to issue a search warrant pursuant to Criminal Procedure Law § 690.05 (2).[4]
There is, however, authority to the contrary. (CPL 240.40 [2] [b] [i] [subject to constitutional limitation, court in which indictment, superior court information, prosecutor’s information, information or simplified information charging misdemeanor is pending may order defendant to appear in a lineup]; People v Knight, 138 Misc 2d 78 [Monroe County Ct 1988] [CPL 240.40 (2) (b) (i) precludes court sitting in part where cases await grand jury action from issuing lineup order while felony complaint pending despite routine issuance of such orders]; cf. People v Bagley, 173 Misc 2d 441 [Mount Vernon City Ct 1997] [CPL 240.40 (2) (b) (v) prohibits City Court from ordering defendant to provide blood sample while felony complaint pending; also observing that court of general jurisdiction may issue such an order provided People satisfy requirements of Abe A.]; People v Hunce, 141 Misc 2d 401 [Crim Ct, Bronx County 1988] [CPL 240.40 (2) (b) (vi) prohibits Criminal Court from ordering defendant to provide handwriting exemplar while felony complaint pending].)
Prior to offering the court’s own rationale for denying defendant’s motion for a double-blind and/or sequential lineup, the court will briefly review the case law addressing this issue.
A. Matter of Abe A.
In Matter of Thomas (189 Misc 2d 487, 492-493), the court derived the authority to direct the prosecution to conduct a lineup in a particular fashion from Abe A., where the Court of Appeals held that:
“a court order to obtain a blood sample of a suspect may issue provided the People establish (1) probable cause to believe the suspect has committed the crime, (2) a ‘clear indication’ that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable. In addition, the issu *453 ing court must weigh the seriousness of the crime, the importance of the evidence to the investigation and the unavailability of less intrusive means of obtaining it, on the one hand, against concern for the suspect’s constitutional right to be free from bodily intrusion on the other. Only if this stringent standard is met, as we conclude it was here, may the intrusion be sustained.” {Abe A., 56 NY2d at 291.)
The Court also provided that: “before authorizing the intrusion, the court must give careful consideration to the circumstances of the particular case. These should include, for instance, not only the probable worth of the evidence to the investigation, but the nature of alternative means, if any, for obtaining the evidence.” {Abe A., 56 NY2d at 298 [citations omitted].)
It is from this last proviso that the Thomas court inferred judicial authority not only to order the prosecution to employ an alternative means of gathering blood samples, but also to order the prosecution to employ an alternative means of conducting a lineup.[5] In this court’s view, however, the obligation set forth in Abe A. to consider the nature of any alternative means of obtaining the evidence does not serve as a condition precedent to ordering alternative means, a job for which a court may not be qualified.[6] Rather, it is a mechanism for ensuring that a compelled intrusion is justified under the circumstances, an interpretation borne out by the Court’s imposition of an obligation to consider the unavailability, not the availability, of less intrusive means of obtaining the evidence. If a less intrusive means is available, the intrusion ought not be compelled.
Yet even if the Court of Appeals in Abe A. authorized the judicial selection of methods of obtaining blood samples, the “stringent standard” it set forth would not likely apply to *454 ordinarily noninvasive lineup procedures. (Abe A. at 291; see Hibel, New York Identification Law, at 224; but see People v Boudin, 114 Misc 2d 523, 526 [Sup Ct, Rockland County 1982] [no valid legal basis for differentiating between legal requirements for conducting a lineup and requirements for conducting other procedures enumerated in CPL 240.40 (2) (b)].) Absent a need to consider alternative methods of conducting a nonintrusive lineup, there can be no authority to order alternative methods of conducting it. In any event, the Court in Abe A. never directly authorized judicial selection of one method of drawing blood over another (see People v Alcime, 2002 NY Slip Op 40021[U] [Sup Ct, Kings County 2002]), and without clear authority, this court will not presume it.
B. Court’s Power to Control the Contents of Its Orders
The Thomas court also found authority for compelling the prosecution to conduct a lineup in a particular fashion in its ability “to control the content of its orders.” (Thomas, 189 Misc 2d at 493.) As a court need not comply with a petitioner’s every request, the court reasoned, it may modify a proposed order. {Id.)
While such a proposition may hold true for a court of general jurisdiction such as. the Supreme Court of the State of New York (see People v Wilson, 191 Misc 2d 224 [Sup Ct, Kings County 2002] [Supreme Court’s authority to order prosecution to conduct double-blind lineup derives from its general original jurisdiction in law and equity, vesting it with inherent power to do all things reasonably necessary for administration of justice within scope of its jurisdiction]), this court has no such authority. Rather, the jurisdiction of the New York City Criminal Court is limited, extending only to crimes and other violations of law (NY Const, art VI, § 15 [c]; NY City Grim Ct Act § 31; CPL 10.30), and encompassing no inherent equity powers beyond those specifically provided for in the Criminal Procedure Law (People v Salzone, 98 Misc 2d 131 [Crim Ct, Kings County 1978]). In addition, this court’s jurisdiction over felonies is merely preliminary in that it is subject to divestiture by the superior courts and their grand juries. (CPL 10.30 [2].)
This court’s authority to control the content of its orders is, thus, limited by its jurisdiction, and defendant has cited no provision in the Criminal Procedure Law authorizing the court to compel the prosecution to conduct a lineup in a particular fashion. For these reasons, defendant’s assertion that this court’s authority to issue a lineup order (which, in any event, *455 is questionable; see supra at 452) encompasses the authority to direct the method of conducting it is without merit.
C. Constitutional Separation of Powers
Even Supreme Court justices have declined to order the prosecution to conduct lineups in a particular fashion. (See Alcime, 2002 NY Slip Op 40021 [U]; People v Martinez, 2001 NY Slip Op 50130[U] [Sup Ct, NY County 2002]; People v Franco, NYLJ, July 5, 2001, at 20, col 5 [Sup Ct, Bronx County].) Those courts relied upon Illinois v Lafayette (462 US 640 [1983]), where the United States Supreme Court declined to order the Illinois police to employ alternative methods of conducting inventory searches on the ground that a court’s function is not to establish administrative procedures, but to rule on a procedure’s constitutionality. The exercise of authority over the method of conducting a lineup was thus considered by those courts as an improper incursion into the executive authority to conduct investigations. (See e.g. Alcime, 2002 NY Slip Op 40021 [U] [state courts review, not prescribe, police identification procedures despite persuasive considerations raised by scientific community]; Martinez, 2001 NY Slip Op 50130 [U] [under separation of powers doctrine]; Franco, NYLJ, July 5, 2001, at 20, col 5 [distinction between judicial function and police/prosecutorial function precludes courts from dictating management operations or intruding upon prerogatives; court measures whether such procedures satisfy constitutional standards]; but see People v Kirby, NYLJ, Oct. 21, 2002, at 25, col 4 [Sup Ct, Kings County] [doctrine of separation of powers does not require courts to ignore social science research and wait for legislature or police to adopt new procedures that enhance fairness of judicial procedures].) The court in Martinez further observed that New Jersey’s adoption of sequential lineup procedures by direction of the State Attorney General supports the argument that the selection of alternative methods of conducting such procedures is an executive function. (Martinez, 2001 NY Slip Op 50130[U].)[7]
*456 D. Fourth Amendment Protections Do Not Extend to Ordering
Double-Blind or Sequential Lineup
In addition to the reasons articulated by the courts that have declined to order the prosecution to conduct a lineup in a particular manner, this court observes that judicial authority with respect to pretrial lineups extends only to ensuring that the defendant’s right to be free from bodily intrusion is not violated, a Fourth Amendment concern (see Abe A., 56 NY2d 288 [court’s authority to order bodily intrusion derives from authority to issue search warrant]), and that there is no due process component to the issuance and execution of a lineup order beyond that stemming from the propriety of the seizure (see Matter of Harris, 164 Misc 2d 846, 851 [Sup Ct, Kings County 1995]). As the use of a simultaneous, as opposed to a sequential, procedure impacts on a defendant’s due process rights (see Manson v Brathwaite, 432 US 98, 99 [1977]), and not on a defendant’s Fourth Amendment rights, the authority to order a suspect to appear in a lineup does not logically encompass the authority to order law enforcement officials to conduct a double-blind and/or sequential procedure.
Moreover, the lineup procedure itself results in no greater intrusion than that resulting from the seizure. (Cf. People v La Placa, 127 AD2d 610, 611 [2d Dept 1987] [court order directing defendant to remove beard and take part in second lineup neither violated CPL 240.40 (2) (b) (i) nor improperly deprived him of any constitutional right without necessary justification].) Thus, defendant’s assertion that a double-blind and/or sequential lineup constitutes a lesser intrusion on his right to be free of unreasonable searches and seizures than a simultaneous lineup has no basis.
E. People v Moses
Finally, defendant relies on a decision of the Second Department, People v Moses (126 AD2d 755 [2d Dept 1987], lv denied 70 NY2d 715), where the Court held that a police failure to comply with a court order to hold a blank lineup[8] prior to a regular lineup constituted harmless error. The record on appeal, however, reveals that the court’s authority to order the blank lineup was not in issue, and thus, Moses provides no such authority. (See also Alcime, 2002 NY Slip Op 40021 [U]; Martinez, 2001 NY Slip Op 50130[U].)
*457 IV. Conclusion
For all of these reasons, I hold that this court is not authorized to issue an order compelling the prosecution to conduct a double-blind and/or sequential lineup. In light of this result, there is no need to address the relative reliability of sequential versus simultaneous procedures.[9]

. Attached to the proposed order is the affirmation of Assistant District Attorney Stuart Silberg in support of a motion to compel defendant’s appearance in a lineup. The affirmation sets forth the facts giving rise to the instant charges that defendant concedes furnished probable cause to compel his appearance in the lineup.

. On October 4, 2002, this court granted the People’s motion to dismiss the complaint on the ground that the People would not be able to prove defendant’s guilt beyond a reasonable doubt as the complaining witness had failed to identify defendant in the lineup. The case was sealed pursuant to Criminal Procedure Law § 160.50 (1).

. At a “double-blind lineup,” the investigators conducting the procedure do not know the identity of the suspect and are thus unable to indicate to the witness, consciously or not, which participant is the suspect. (See People v Wilson, 191 Misc 2d 224, 228 [Sup Ct, Kings County 2002].) A “sequential lineup” is one in which the suspect and fillers are individually displayed to the witness in an attempt to prevent an identification by comparison alone. *451 (Id.; see generally United States Department of Justice Office of Justice Programs, Eyewitness Evidence: A Guide for Law Enforcement [1999].)

. The compelled placement of a suspect in a lineup has also been upheld where the suspect is in lawful custody on an unrelated matter. (See People v King, 270 AD2d 360 [2d Dept 2000], lv denied 95 NY2d 799 [once defendant lawfully arrested on out-of-state fugitive warrant, police may place him in lineup for unrelated matter]; People v Crawford, 221 AD2d 462 [2d Dept 1995], lv denied 87 NY2d 920 [1996]; see Hibel, New York Identification Law, at 222; cf. People v Whitaker, 64 NY2d 347, 352, cert denied 474 US 830 [1985] [when suspect lawfully held on unrelated matter, no Fourth Amendment violation results when suspect compelled to participate in lineup as filer].)

. Subsequent to the court’s issuance of the lineup order in Thomas, the People indicted the defendant without conducting the lineup. They then moved pursuant to Criminal Procedure Law § 240.40 (2) (b) (i) before another judge for a new lineup order, contending that the prior, preindictment lineup order was no longer effective. The successor court issued the lineup order and denied the defendant’s motion for an order compelling the prosecution to conduct a sequential lineup. (Tom Perrotta, First Sequential Lineup is Held in Staten Island, NYLJ, Apr. 29, 2002, at 1, col 3.)

. The imposition on the court of a duty to select methods of obtaining evidence could result in time-consuming preintrusion hearings as to the most reliable method to be employed.

. A proposed bill seeking the enactment of new sections of the Criminal Procedure Law and Family Court Act requiring the police to, among other things, conduct sequential lineups is presently pending. (2001 NY Assembly Bill A 9578.)

. A “blank” lineup contains fillers only. (See e.g. People v Guerea, 78 Misc 2d 907 [Crim Ct, Bronx County 1974].)

. The court nonetheless observes that some courts have declined to issue orders directing sequential lineups on the ground that such procedures have not been found to be substantially more reliable than simultaneous procedures. (See Kirby, NYLJ, Oct. 21, 2002, at 25, col 4; Matter of Taylor, NYLJ, Oct. 4, 2002, at 21, col 4 [Sup Ct, Bronx County] [also finding that presence of counsel for suspect at lineup will ensure reliability of procedure]; Franco, NYLJ, July 5, 2001, at 20, col 5 [no reliable legal or statutory authority exists for proposition that likelihood of false identification in simultaneous lineup is sufficiently substantial as to implicate due process rights].)
Additionally, a court-ordered sequential lineup recently held on Staten Island (People v Affon, oral order [Crim Ct, Richmond County, Apr. 2002]) proved somewhat problematic. The witness, initially unable to identify any of the six participants, identified the defendant after the participants were sequentially displayed for a second time, and over the defendant’s objection. (Perrotta, First Sequential Lineup is Held in Staten Island, NYLJ, Apr. 29, 2002, at 1, col 3.) The Affon case thus presents the issue of whether multiple sequential displays provide the witness with an opportunity to make a comparative identification, the alleged weakness associated with simultaneous lineups.
While the court agrees with the courts in Kirby (NYLJ, Oct. 21, 2002, at 25, col 4), Wilson (191 Misc 2d 224), and People v Ruiz (News in Brief, NYLJ, May 20, 2002, at 1, col 1 [Grim Ct, Bronx County 2002]), that double-blind lineups virtually eliminate suggestive police conduct directed toward the witness, this court can only recommend, as it did when it issued its oral ruling, that the prosecution employ that procedure.